RETTA RUTTER et al., Appellants, v. JOHN F. CAROTHERS et al.

Division One, November 27, 1909.

1. QUIETING TITLE: Cotenants: No Adverse Claimant. An action to quiet title will not lie unless there is an adverse claim asserted by defendants. So that in a suit to ascertain and determine the title, plaintiffs are estopped to take the position that the land belonged to the father of plaintiffs and defendants, that it was mortgaged by him and at the foreclosure sale bought in by defendants, and that as such purchase inured for the benefit of all, so also was their possession the possession of all; for that theory of friendly and beneficial cotenancy runs counter to the theory upon which plaintiffs bottom their action. They must recover, if at all, upon the theory of an adverse holding.

2. PLEADINGS: Agreed Statement: Determinative of Trial Theory. The pleadings are necessarily a substantial part of the cause of action submitted on an agreed statement of facts, and the trial theory must be read into and illuminate the words of the agreed statement. The cause cannot be submitted and tried, and a judgment rendered upon one theory and when the judgment is challenged and set aside another judgment be rendered and re-established on a different theory outside the pleadings.

3. **LACHES.** Though the answer pleads laches as a defense, yet if laches is not admitted by the pleadings and there are no facts in the agreed statement on which to base laches, the plea will not be allowed.

4. **LIMITATIONS: Under Disability: By Heirs: Three Years.** Persons under legal disability have ten years, at all events and under any circumstance, in which to maintain suit for land, and an additional time in certain emergencies and contingencies. "The time in this article limited," used in section 4262, Revised Statutes 1899, is ten years, and is to be construed in connection with the words in section 4265 which ordains that a person under the specified disability may bring his action "after the time so limited, and within three years after such disability is removed."

5. ————: ————: **Ten Years: By Heirs Within Three Years.** If the disability has existed for less than ten years, the person laboring under such disability must institute his suit within three years after the removal of the disability, unless said three years, together with the period of disability, are less than ten years, in which event such person is entitled to the unexpired portion of the ten years. So that, where one of the sons of the deceased landowner bought in the land at a foreclosure sale on May 12, 1898, and plaintiffs' mother, a daughter of said landowner, then covert, died on July 25, 1898, a suit brought by plaintiffs on September 2, 1904, against said son, to establish their right as cotenants to share in the benefits of said purchase on the theory that defendant's purchase inured to all the heirs, was not barred by limitations simply because they did not bring their suit within three years after their mother's death. They and their mother were entitled to ten years in any event—that is, ten years after the cause of action accrued on May 12, 1898; and their suit, though not brought within three years after her death, but within ten years after the cause of action accrued, was not barred.

Appeal from Shelby Circuit Court.—*Hon. Nat. M. Shelton*, Judge.

REVERSED AND REMANDED (*with directions*).

*Dysart & Mitchell* and *H. A. Wright* for appellants.

(1) The judgment rendered for the plaintiffs was right and proper, and it was error to grant defendants

a new trial. (2) The defendants seek to hold the land in question exclusively, solely on the Statute of Limitations. It is not possible for one. to acquire title to real estate under any section of our Statute of Limitations, without an adverse holding for some length of time. Our statute is based upon the fact of an adverse possession and claim of ownership. The answers of the defendants do. not allege and count upon an adverse holding, but simply, that the plaintiffs failed to sue within three years after the death of their mother. Nor does the agreed statement of the facts show an adverse holding, or make any claim of an adverse holding. It follows that the defendants cannot recover on the Statute of Limitations. A trust estate could not be converted into an adverse holding without an express renunciation of the trust, with notice to the beneficiary. McCune v. Goodwillie, 204 Mo. 306; Coberly v. Coberly, 189 Mo. 16. (3) It is not possible in this State for one to acquire title to real estate by limitation, without an adverse holding for a period of ten years. In case of certain disabilities, the time may be much longer, among which disabilities are insanity, infancy and coverture. The privileges provided for the unfortunate, the weak and the incapable, were not intended for their prejudice, but for their benefit. These privileges were not intended to limit the term of ten years, but to increase it, when disability existed. This is the evident meaning of sections 4262, 4265 and 4267, R. S. 1899, which must be construed together. And this has been the uniform ruling of this court in construing section 4267. Gray, v. Yates, 67 Mo. 603; DeHatre v. Edmonds, 200 Mo. 246; Robinson v. Allison, 192 Mo. 371; Graham v. Ketcham, 192 Mo. 15. (4) It is conceded that plaintiffs had no cause of action until after their mother's death, which death occurred on the 26th of July, 1898. This suit was commenced on the 2d day of September, 1904, only six years after the death of the mother.

The plaintiffs had four years to run before the ten-year period was up. The defendants' possession, even if adverse, covered only six years. If the mother had lived four years longer, then the plaintiffs would have been entitled to three years in addition to bring their suit—three years in addition to the ten. The deed of trust was foreclosed on the 12th day of May, 1898, and the mother of the plaintiffs died about two months thereafter. It follows that plaintiffs are not barred by any section of our Statute of Limitations, even conceding for the argument's sake, that defendants were holding the premises adversely for the period of six years next before the commencement of this suit. This sale concluded the rights of the widow, she having joined in the deed of trust. When the defendants, John F. and James A. Carothers, discharged the lien and bought in the outstanding title, they took the legal title in trust for all the tenants in common, and held the premises in trust for all the heirs of the ancestor, James H. Carothers, subject to be reimbursed for the money paid by them in discharge of the lien. That the defendants held the legal title in trust for all the heirs is conceded by the agreed statement of the facts, and is evidently the law. The doctrine is elementary. Perry on Trusts (5 Ed.), p. 164, sec. 127 and notes; Rector v. Gibbons, 111 U. S. 291; Hinters v. Hinters, 114 Mo. 26; Allen v. DeGroodt, 105 Mo. 442; Dillinger v. Kelly, 84 Mo. 561; Picot v. Page, 26 Mo. 421. See McCune case and Coberly case, supra. This trust estate could not be converted into an adverse holding, without a positive and express repudiation of the trust, with notice to the *cestui que trust*. And the evidence of such repudiation and notice to the beneficiaries must be "clear and unmistakable." 2 Perry on Trusts (5 Ed.), pp. 552-559, secs. 863 and 864; Ib., p. 563, sec. 866; Blackaby v. Blackaby, 56 N. E. 1053; Kohle v. Hobson, 215 Mo. 213.

*V. L. Drain* for respondents.

(1)    Plaintiffs are not entitled to the relief asked for, they having not elected within a reasonable time to treat the defendants as trustees, and have therefore waived their rights as to the subject-matter.  Burnes Estate v. Ayr Lawn Co., 82 Mo. App. 66; Cockrill v. Hutchinson, 135 Mo. 67.    (2)  It is conceded by the petition that defendants claim adverse and exclusive title to the land in controversy.  In any event the fact that John F. Carothers purchased this land at foreclosure sale, took a deed therefor and had the same placed of record, and thereafter sold a portion of it to his brother, and the further fact that they have controlled it exclusively ever since the death of their father, fixes the status of the parties and makes the defendants adverse claimants.  Campbell v. Laclede Gas Co., 84 Mo. 352.    (3)  This action is barred by the Statute of Limitations, the same having been pleaded in defense.  It is conceded that the mother of plaintiffs was a married woman at the time of her father's death, and so remained until her death.  Her right to sue descended to her heirs and under the provisions of Sec. 4267, R. S. 1899, this right must be exercised within three years after her death.  Her death occurred on July 26, 1898; the right to bring this action by her heirs terminated on July 27, 1901, and this suit having been begun on September 2, 1904, the same is barred by the statute.  R. S. 1899, secs. 4265-4267; Fairbanks v. Long, 91 Mo. 636; Reed v. Painter, 145 Mo. 342; Rosenburger v. Mallerson, 92 Mo. App. 27; Robinson v. Allison, 192 Mo. 366; Smith v. Settle, 128 Mo. App. 379.

LAMM, P. J.—In a suit under section 650 to declare and establish title in 176 acres of land in Shelby county, judgment went for plaintiffs for an undivided one-third interest, subject to a charge of $383 in favor

of defendants. Afterwards a new trial was awarded on defendants' motion. From that order plaintiffs appeal.

Summarized, the petition charges and the agreed statement of facts shows that James H. Carothers was twice married. His first wife died. By her he had one child, Alvira. Alvira married Chatman Speight and died leaving children, married and unmarried, minors and adults, who, with their father, Chatman Speight, are parties plaintiff. By his second wife, Millie G., he had two sons, John F. and James A., who with Millie G., are parties defendant. On an undisclosed day in 1892, James H. Carothers died seized of the southeast quarter and the east 16 acres off of the east half of the southwest quarter in section 36, township 58, range 12, in Shelby county—all in possession of defendants.

It is charged in the petition that defendants claim title to the exclusion of plaintiffs and are seeking to exclude and bar plaintiffs from any right, or interest in the land; that defendants' claim of exclusive title is based upon a purchase made by the defendant John F. Carothers at a trust deed sale, under a defaulted trust deed executed by his parents James H. and Millie G.; that if such is the basis of defendants' claim, it is not valid for that the children of Alvira are entitled by inheritance and descent to a one-third undivided interest in the real estate and that the purchase by John F. at foreclosure sale inured to the benefit of all the heirs of James H. Carothers as tenants in common.

The prayer of the petition was that the court declare and quiet the title as between plaintiffs and defendants and ascertain and determine the title and interests of the parties respectively and define and adjudge the several interests in such real estate and that defendants and each of them be forever barred from claiming any right, title or interest in the part

adjudged to plaintiffs; that the cloud upon their title be removed and "for such other relief as they may appear to be entitled to in the premises."

The answer of Millie G. admits her marriage with James H.; that she is his widow and that he died seized of the land described; and charges that Alvira, the mother of plaintiffs, died in July, 1898; further that plaintiffs have no right to maintain this action because of section 4267 of the Statute of Limitations. As a further defense she pleads generally that plaintiffs have been guilty of such laches as prevent a recovery.

Defendants John F. and James A. file a joint answer, admitting that James H. Carothers died seized of the land, but they deny plaintiffs have any interest or rightful claim in the premises in that, they say, James H. and Millie, his wife, executed a deed of trust on the land securing to the Jarvis-Conkling Trust Co. borrowed money, which trust deed was spread of record; that after the death of James H., the note evidencing said borrowed money and so secured was assigned to one Whitby; that on May 12, 1898, said deed of trust was duly foreclosed; that John F. Carothers purchased at said foreclosure sale for $1,400.50 and received a trustee's deed on the payment of said sum; that John F. afterwards conveyed an interest in the land to James A.; that the right, if any, of plaintiffs to bring this action terminated in three years after the death of their mother in the month of July, 1898. Wherefore, they plead the three-year Statute of Limitations, to-wit, section 4267, Revised Statutes 1899, as a defense, and that plaintiffs have been guilty of laches abating the suit.

The trial was to the court as in equity and (as said) was upon an agreed statement of facts. In addition to the facts admitted, already set forth, it stipulated that rent offset betterments; that if the court ruled against defendants on law questions tenderd by their answer, then a decree might go adjudging one-third of

the land in controversy to plaintiffs, subject, however, to a charge of $383 to be paid defendants by them (*i. e.* one-third of a mortgage debt presently explained)— nothing in such stipulation to preclude either party from appeal.

It was further agreed that James H. Carothers died seized of the real estate in controversy subject to a recorded mortgage (viz.: said deed of trust) given by himself and wife to secure a note therein described, which mortgage was foreclosed on the 12th of May, 1898; that at such foreclosure sale John F., one of the defendants, purchased the land; that afterwards John F. conveyed an undivided one-half interest to James A., his brother and codefendant; that the amount of the mortgage debt at foreclosure was $1,150; that Alvira Speight and the defendants John F. and James A. were the only children of James H. Carothers; that Alvira died July 26, 1898, leaving the plaintiffs as her only heirs; that the foreclosure was not made until nine months after the death of James H.; that the present suit was filed September 2, 1904; that Alvira was, at the time of the foreclosure and up to her death, a married woman; that certain of her children are minors who sue by their next friend; that the trustee's deed to John F. is dated May 12, 1898, and is duly of record and that the purchase price was $1,400.50.

It was further stipulated that by a proper proceeding in the probate court of Shelby county, the personal estate of James H. Carothers was found to be the absolute property of the widow and that administration was dispensed with. Such is a summary of the record.

I. Assuming, as a postulate, that as a general rule tenants in common bear a confidential relation to each other, that the possession of one is the possession of the others and that the protection of the common title by one cotenant in the payment of taxes or other

liens or a purchase at execution or foreclosure sale, on the one hand, creates a common burden on all the tenants in common and, on the other hand, creates a common benefit to be shared by all, and assuming that such purchase as a general rule is presumed to be for the benefit of all (Hinters v. Hinters, 114 Mo. 26; Cockrill v. Hutchinson, 135 Mo. 67), it is argued by plaintiffs' counsel that since the agreed statement of facts does not *in terms* assert an adverse holding or claim on the part of defendants as against plaintiffs, therefore, there arises a *prima facie* presumption that said purchase of John F. Carothers inured to all the heirs of James H. Carothers, and (they say) the judgment rendered in the first instance in favor of plaintiffs can well stand on that proposition, if on no other. But, under the facts of this record, we deem that contention unsound. Plaintiffs are estopped to take that position; for it runs counter to the very theory upon which they bottomed their case and on which they invoked the aid of the law. Observe, there were no grounds upon which an action to quiet title would lie unless there was an *adverse claim asserted by defendants*. Accordingly, the petition alleges plaintiffs' ouster by defendants, and the suit proceeds on the theory of an adverse claim and hostile possession by them. So, the answers are in the nature of a confession and avoidance, viz., admitting the original cotenancy, but alleging the exclusion of plaintiffs from possession and from title and interest under a hostile claim predicated of a purchase at the foreclosure sale. On that theory the case was brought and tried and it will not do to read such theory out of the agreed statement of facts. The pleadings are necessarily a substantial part of the cause submitted on an agreed statement, and the trial theory must be read into and illuminate the words of the stipulation. To rule otherwise would be the same as to allow A to recover a judgment against B on one theory and, when the judgment is challenged

and set aside, allow A to re-establish the judgment on a different theory and one outside of the pleadings, which, in this case, would be the theory that there was no occasion for any suit to quiet title and no use of any judgment at all in that behalf.

As it is an unbending rule of appellate practice that a cause must proceed above on the same theory it was tried below, and that a judgment is the conclusion of the law on the pleadings and facts, the point is ruled against plaintiffs.

II. It is argued here that plaintiffs were guilty of such laches as bars recovery. Attending to that contention, it will be observed that though the answers plead laches as a defense, yet laches is not admitted by the pleadings and there are no facts in the agreed statement relating to laches and on which to predicate such defense. Laches gives rise to an equitable doctrine, free from artificial or fixed rules, having regard to the relations of the parties to each other and to the subject-matter to be applied to each case in accordance with its own particular circumstances in order to reach substantial justice—for instance, where plaintiff lies by an unreasonable length of time awaiting a rise in land or some future event to determine his course, or where by acquiescence or by sleeping upon his rights he creates the belief in others that those rights are abandoned whereby he influences them to act on such belief, or where something has intervened whereby the party asking relief would obtain an unconscionable advantage if the relief were given. Under these or like conditions, where there is some natural justice behind the claim, the defense of laches is allowed independently of the Statute of Limitations. [Cockrill v. Hutchinson, 135 Mo. l. c. 75 *et seq.;* Stevenson v. Smith, 189 Mo. l. c. 446 *et seq.;* Landrum v. Bank, 63 Mo. l. c. 56 *et seq.;* Bucher v. Hohl, 199 Mo. l. c. 330.]

The case at bar being barren of essential facts upon which to predicate the defense of staleness or laches, the point is ruled against defendants.

With the foregoing subsidiary questions at rest, we confront the main proposition in the case.

III.   The foreclosure was on May 12, 1898, and the trustee's deed bears date that day. Alvira died on the 26th day of the following July. Suit was brought by her children on September 2, 1904—that is, more than three years after her death but within ten years of the time a cause of action accrued to Alvira. With the record in this condition, learned counsel for defendants insists that the cause of action accrued to Alvira on May 12, 1898, and existed in her favor until her death on July 26, 1898; that (she being then under disability) her heirs, under Revised Statutes 1899, section 4267, had three years after her death, and no more, to sue and establish their rights in the property. Learned counsel for plaintiffs contend, *contra,* that the Statute of Limitations would not run for ten years after May 12, 1898, and that the three-year provision of the statute must be construed so that it will not impinge upon or destroy the ten-year provision, which latter, they say, is a general rule of statutory law relating to limitations on real actions.

A solution of the problem thus presented calls for a construction of certain sections of our Statute of Limitations relating to real actions, viz., sections 4262, 4265 and 4267.

The general language employed in these sections creates obscurity and sometimes makes their construction exceedingly troublesome when the courts are called upon to apply them to a given case. The trouble is accentuated not a little by the use of unhappy expressions on the part of the lawmaker. We have come to the conclusion that the contention of defendants' counsel is unsound and that an equitable construction

223 Sup—41

of the statute (by which we mean an interpretation of the written law in accordance with its spirit and true intendment) sustains the position of plaintiffs' counsel. This because:

(a) Conceding that courts may not enlarge the written law by addition or diminish it by writing exceptions into the law obviously absent from the legislative mind; conceding, moreover, that the law must be obeyed notwithstanding the apparent rigor and hardship of its application (*ita lex scripta est*); conceding, withal, that if the intent of the lawmaker is plain and single then courts are relieved from the burden of finding a reason for the law (*stat pro ratione voluntas*); yet, the practical administration of the law through the courts would quite miss refined and elevated justice in many instances if· the naked and cold words of the statute were not warmed into life and good sense by seeking, finding and reading into the law its true spirit and intendment. Not only so, but obviously this delicate and high judicial task is not to be put to one side because it may be one difficult of performance; for in law, as in life, the more difficult the task imposed by duty, the more occasion for caution and pains.

"The construction of all statutes of this state" (says the lawmaker, R. S. 1899, sec. 4160) "shall be by the following additional rules, *unless such construction be plainly repugnant to the intent of the Legislature or of the context of the same statute*" (here follow certain rules). Referring to the exceptions just mentioned, the Legislature in a prior section (4159) again points to the judicial duty and power of construing statutes by certain fixed rules, "*unless there be something in the subject or context repugnant to such construction.*" That rule of interpretation, as has been often said in the venerable language of great judges, is but the application of the divine injunction that the letter killeth while the spirit maketh

alive. Accordingly, from the Year Books to this Year of Grace, those are recognized canons of construction which ordain that the naked letter of the law must gently and a little give way to its obvious intendment; that those who interpret the laws must not impute injustice to the lawmaker by so interpreting his language as to unnecessarily produce harsh and unreasonable results, or impute to him a disposition callous to natural justice. We must, say other rules of interpretation, construe all statutes relating to the same subject-matter *in pari materia,* throw the light of the context upon the passage to be interpreted and so rule, if possible, that other provisions of the law are not destroyed or made meaningless, or repugnant, thus marring the symmetry of the whole body of the enactment. [Perry v. Strawbridge, 209 Mo. l. c. 636 *et seq.*; Keeney v. McVoy, 206 Mo. l. c. 64 *et seq.*]

It may not be amiss to remind ourselves of a general proposition applicable to statutes of limitations. It has been said that such statutes are as beneficial as any to be found in the books; that they rest upon sound public policy and tend to the peace and welfare of society; that they are construed so as to effectuate the intention of the Legislature, although they in individual cases may produce hardship. While one obvious purpose to be subserved is repose, yet the philosophy of these statutes connects itself with the infirmities of human memory. Accordingly, it has been well said that: "If parties will not settle their business matters within reasonable periods before human testimony is lost and human memory fails, on pain of losing the right to a remedy thereon, not the law, but the party, is responsible for the hardship entailed." [Wood on Limitations (3 Ed.), sec. 4.]

Giving effect to the foregoing general observations by holding in mind the rules of interpretation set forth, a scholar in statutory law or in general jurisprudence would not expect to find in the Statute of

Limitations a rule of written law dealing with a person under the disability of infancy or other disability, or the heirs of those under such disability, more harshly than it dealt with others not so handicapped. Conceding that such scholar would approach his investigation charged with knowledge that the policy of the law does not allow the cumulating or tacking of disabilities, yet he would be astonished to find that a Legislature had given to a person *not* under disability, ten years to bring his real action, and if he die within the ten years the same law gave his heir what was left of the ten-year term to sue, and that the same Legislature had granted to a person under disability the grace of twenty-four years in which to sue if the disability continue so long, or three years after the disability was removed, if removed after ten years and within the twenty-four; and then had faced about and had said to the mother or infant child under disability: If you are so unfortunate as to die presently after your cause of action accrued, say, in a day, a month or a year, your heirs (themselves peradventure under disability) shall have only three years plus the day, the month or year you lived after your cause of action accrued. What is this but supplementing the terrors of death with a heavy burden at the hands of the law—a burden not laid on the shoulders of others more fortunate? Yet to that complexion we must come if we adopt the theory of defendants' counsel. If Alvira had been a man or unmarried (i. e., *sui juris*) she, and her heirs in case of her death, would have ten years in which to sue after her cause of action accrued. But being a woman and married her heirs (some of them minors), it is contended, have only three years after her death in which to sue, which, added to the days between May 12 and July 26, 1898, make the total term of limitations allowed in the case at bar three years, two months and fourteen days instead of ten years.

A bare statement of the proposition shows the

harsh inequality in such interpretation of the statute —a discrimination, too, against a class of persons the law holds in tender regard. It seems to me a court would be justified in hesitating and doubting much, and looking long and well to the reason and words of the law, before reaching that conclusion.

(b) Fortunately such conclusion is not a necessary one as will presently be seen.

Section 4262 reads: "No action for the recovery of any lands, tenements or hereditaments, or for the recovery of the possession thereof, shall be commenced, had or maintained by any person, whether citizen, denizen, alien, resident or non-resident of this state, unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question, within ten years before the commencement of such action."

Contemplating an entry upon land in certain contingencies, the next section provided for commencing an action after entry and directs that an action must be commenced within one year after making such entry "and within ten years from the time the right to make such entry *descended* or accrued."

Section 4265 reads: "If any person entitled to commence any action in this article specified or to make any entry be, at the time such right or title shall first descend or accrue, either within the age of twenty-one years, or insane, or imprisoned on any criminal charge or in execution upon some conviction of a criminal offense for any time less than life, or a married woman, the time during which such disability shall continue, shall not be deemed any portion of the time in this article limited for the commencement of such action or the making such entry; but such person may bring such action or make such entry *after the time so limited, and within three years after such disability is removed*: Provided, that no such action shall be com-

menced, had or maintained or entry made by any person laboring under the disabilities specified in this section, after twenty-four years after the cause of such action or right of entry shall have accrued."

Section 4267 (the one relied upon by defendants) reads: "If any person entitled to commence such action or to make such entry die during the continuance of any disability specified in section 4265, and no determination or judgment be had of the title, right or action to him accrued, his heirs, or any person claiming from, by or under him, may commence such action or make such entry *after the time in this article limited for that purpose, and within three years after his death,* but not after that period."

Obviously section 4262 gives to all persons *sui juris* or *non sui juris,* under disability or not, whether ancestor or heir, a main right, viz.: ten years in which to institute suit for the recovery of land or for the recovery of the possession thereof, said ten years commencing with the accruing of a cause of action. That section and the ensuing sections (with some modifications immaterial here) have been the statute law of this State for three-fourths of a century. Without any legislative direction to that effect that section and those following it would be construed together as relating to the same subject-matter, and so dovetailed together by interpretation as to make a symmetrical code. But we see the Legislature itself intended they should be construed together. They refer to each other in words. They are all found in article one of chapter forty-eight, Revised Statutes 1899. Section 4265 is plainly intended as a benefit to those under disability. It is a shield, not a sword. It does not shorten the ten-year rule prescribed in section 4262 but adds something of value by tolling the statute in the interest of those under disability by ordaining that the time such disability shall continue "shall not be deemed any portion of the time in this article limited for

the commencement of such action." The "time in this article limited" is ten years and section 4265 ordains that a person under the specified disability may bring his action "after the time so limited, and within three years after such disability is removed." We think it obvious that section 4265 assumes that persons under disability have the ten years at all events and under any circumstances, but also have an additional time in certain emergencies and contingencies. If we did not construe the phrase, "after the time so limited and within three years after such disability is removed," as perpetuating in any event the ten-year statute, we would have an absurd and unjust result easily put. For instance, if A, a married woman, has a right of action accruing to her on Monday and if on Tuesday she become discovert, she would have only three years and one day in which to sue, for her disability was removed on Tuesday and some of the words of section 4265 seem to require her to sue in three years after that event. But this interpretation "corrodes the bowels" of the text and, therefore, is vicious in taking no note of the words "after the time so limited," which evidently refer to section 4262 giving to her and everyone else the general, plain, unlimited right to sue within ten years.

When we come to section 4267, we find the same phraseology connecting that section with "the time in this article limited for that purpose." While the language used lacks precision and the law is so unhandsomely written as to breed doubts and obscurities, as said, yet if we read the ten-year rule into sections 4265 and 4267 to the extent that it is to be preserved as a general statute of limitations with (in named contingencies) certain extensions and benefits to those under disability, we think in that way some of the obscurities will be better resolved than in any other.

(c) The foregoing conclusion lies well with the trend of the judicial mind. In Gray v. Yates, 67 Mo.

601, this court announced that: "If the disability has existed for a period of time less than ten years, the person laboring under such disability must institute his suit within three years after the removal of the disability, unless said three years, together with the period of the disability, are less than ten years, in which event such person is entitled to the unexpired portion of the ten years; for all persons are entitled to ten years in any event. When a party has the three years given by the fourth section, and the whole period of the ten years given by the first section, the right of action or of entry is barred. In other words, when ten years have elapsed since the right of action accrued, and three of those years have been free from disability, the right of entry is barred. A like construction has been given to a similar statute in New York in the following cases: Smith v. Burtis, 9 Johns. 180; Jackson v. Johnson, 5 Cow. 93, 94; Willson v. Betts, 4 Denio 208, 209."

The Gray case seems never to have been overruled or criticised but, *contra*, has been frequently cited with approval.

DeHatre v. Edmonds, 200 Mo. 246, was a troublesome case and the different provisions of the Statute of Limitations on real actions were held under review. The exposition there given of those provisions was cautious, painstaking and full. Our learned Brother Graves, speaking for us all, in discussing Robinson v. Allison, 192 Mo. 366, quotes liberally from that case but differentiates and discriminates. Referring to its exposition of section 4267, he said: "Of course, if the limit of three years named in this section added to the time already run from the date of the accrual of the right to sue, would make the time less than the ten years named in section 4262, the party would have the full ten years given by that section, but no more. On the other hand, if the three years served to extend the ten years, the party entitled to sue

would have the full benefit of the three years, but no more.''

In the Robinson case, *supra,* and in Read v. Painter, 145 Mo. 1. c. 354, there are remarks, somewhat *obiter,* we think, and by way of argument, seemingly running counter to the doctrine announced in the Gray and the DeHatre cases. But it would seem those remarks were not necessary; for, as we read those cases, in both of them the integrity of the ten-year rule of limitations was preserved.

The premises considered, we conclude the judgment entered below on the pleadings and agreed statement of facts was right. Hence, it was error to grant a new trial. Accordingly, the order granting one is reversed and the cause remanded with directions to overrule that motion and reinstate the original judgment in favor of plaintiffs. All concur.