ANNA EGAN, APPELLANT, v. GUS PALMER, RESPONDENT.[*]

Kansas City Court of Appeals. July 6, 1926.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p. 632, n. 99; Motor Vehicles, 42CJ, p. 958, n. 9; p. 1233, n. 27; p. 1237, n. 43; p. 1249, n. 92; p. 1263, n. 57; p. 1281, n. 1; Negligence, 45CJ, p. 1316, n. 10; p. 1318, n. 11; p. 1342, n. 86; Trial, 38Cyc, p. 1543, n. 67; p. 1615, n. 19.

*Harry G. Kyle* and *Walter Raymond* for appellant.

*Paul C. Sprinkle* and *Otto P. Higgins* for respondent.

BLAND, J.—This is an action for damages for personal injuries. There was a verdict and judgment in favor of plaintiff in the sum of $5000. The court granted a new trial to defendant and plaintiff has appealed.

The facts show that plaintiff was injured on August 25, 1923, about 2:00 P. M., while riding in an automobile being driven by her daughter, Mrs. Adamson, westwardly on 18th street in Kansas City, Missouri, when a truck being driven by a servant of the defendant southwardly on Charlotte street, intersecting 18th street at right angles, struck on the intersection the automobile in which plaintiff was riding. Mrs. Adamson was driving a Ford sedan automobile owned by her husband and had invited plaintiff and another daughter of the latter to accompany her to a theater. Plaintiff was seated with her other daughter in the rear seat and on the right side thereof. For several blocks the automobile had been driven along the street car track on 18th street about one and a half feet south of and parallel to a truck being driven in the same direction by one Tivis. The traffic on 18th street was very heavy and was proceeding westwardly on the north side of the street in double file. There were several automobiles ahead of the Tivis truck and two or three ahead of the Adamson automobile and between the latter and a street car proceeding in the same direction. The street car stopped just east of Charlotte street to let off and take on passengers. This caused all automobile traffic behind the street car to stop. When the street car started the automobile truck started with it and the intersection then was filled with a double stream of traffic going west. Mrs. Adamson and Tivis started up going across the intersection side by side, both vehicles being in low speed and proceeding at the rate of about five miles per hour. Only two or three feet intervened between the front ends of the Tivis truck and the Adamson automobile and the automobiles in front of each.

Charlotte street between 17th and 18th streets in the direction from which defendant's truck came, had a slight incline toward the south. Defendant's truck was first seen 200 to 300 feet north of the intersection coming south. At this time it was being driven at a rate of speed from eighteen to twenty miles per hour, the street car was proceeding across Charlotte street and the Tivis truck was moving but had not yet emerged into that street. Tivis testified that the first time he saw defendant's truck it was between 17th and 18th streets on Charlotte but he was unable to say exactly how far away it was; at this time it was going from eighteen to twenty-five miles per hour and the witness was "going out in Charlotte street." The witness continued to proceed forward. The next time the witness saw defendant's truck, "It was right up on me." The driver of defendant's truck had not slackened its speed or sounded any warning of its approach. When the witness saw it the second time he stopped in order to permit it to pass in front of him and it did so, passing about two feet in front of the front end of his truck.

The evidence further shows that Tivis's truck was a large "stake truck" with a cab about twelve or fifteen feet high in front. Each of the sides of the body of the truck was covered with a large sign. Mrs. Adamson testified that she could not see north on account of the obstruction caused by the cab of Tivis's truck but when Tivis stopped she looked to see "what was the matter" and saw defendant's truck by looking over the radiator of the Tivis truck. At this time she was about three feet east of the center of Charlotte street. When she saw defendant's truck she had "just *started* to nose out ahead" of the Tivis truck, she was "just about even" with the Tivis truck and "had not got out in front of the (Tivis) truck yet." When she saw defendant's truck coming she turned her car toward the south in an effort to avoid a collision but was unable to do so, defendant's truck striking the right front fender of her car. The collision occurred two or three feet ahead of and in front of the Tivis truck. The evidence further shows that at the intersection in question 18th street is about thirty feet and Charlotte about forty feet in width. There was no other southbound traffic on Charlotte street north of 18th street at the time in question.

The negligence charged in the petition was that—

" . . . defendant's said agent and servant negligently failed to stop or slow down or sound a warning by horn or otherwise before driving said truck into said intersection; that just as plaintiff's car reached the center of said intersection, defendant's agent and servant drove defendant's said truck into violent collision with the automobile in which plaintiff was riding," and that the driver of defendant's truck—

" . . . negligently failed to control and operate said truck in such a manner that it would not be driven into violent collision with the automobile in which plaintiff was riding, injuring plaintiff; that he negligently drove said truck into violent collision with the automobile in which plaintiff was riding, injuring plaintiff; that he negligently failed to wait until plaintiff had crossed said intersection before driving said truck into said intersection and into violent collision with the automobile in which plaintiff was riding, injuring plaintiff; that he negligently failed to stop said truck, swerve same to one side or slow said truck down before driving into said intersection and into violent collision with the automobile in which plaintiff was riding, injuring plaintiff; that he negligently failed to sound a warning by horn or otherwise before driving said truck into said intersection and into violent collision with the automobile in which plaintiff was riding, injuring plaintiff; that he negligently drove said truck down said street at a high and negligent rate of speed, to-wit: Twenty-five miles per hour and into violent collision with the automobile in which plaintiff was riding, injuring plaintiff; that he

negligently drove said truck into said intersection and into violent collision with the automobile in which plaintiff was riding, after he saw, or by the exercise of ordinary care could have seen plaintiff in a position of peril, oblivious to her danger and unable to extricate herself in time, by the exercise of ordinary care to have sounded a warning, stopped said automobile or swerved the same to one side in time, by the exercise of ordinary care to have avoided the accident; that he negligently drove said truck into said intersection at a high and negligent rate of speed, to-wit: Twenty-five miles per hour and into violent collision with the automobile in which plaintiff was riding in direct violation of sections 9 and 26 of Ordinance No. 28759 of Kansas City, Jackson county, Missouri, which were in full force and effect on that date and which,'' among other things, provided that when passing a street intersection the rate of speed of a motor vehicle should not exceed ten miles per hour when any person or vehicle is upon said intersection ''with whom or with which there is or may be danger of collision.'' The petition also alleged that the driver of defendant's truck negligently drove said truck into said intersection and into violent collision with the automobile in which plaintiff was riding without sounding any warning by horn or otherwise in violation of an ordinance set out in the petition, which merely required, among other things, that automobiles shall be equipped with a horn or signal device of a certain kind.

The court in granting the new trial assigned as a reason therefor that he should have sustained the demurrer to the evidence for the reason—

'' . . . that the daughter, who was driving the automobile in which plaintiff was riding at the time of the collision, was passing a truck going in the same direction while said truck was crossing an intersecting highway, in violation of sub-division E, section 21, page 93, of the Laws of Missouri, 1921, Extra Session.''

Plaintiff insists that the court erred in sustaining defendant's motion for a new trial; that plaintiff's daughter was not violating the statute at the time of the collision and if she were, her negligence would not be imputable to plaintiff and that it would be no more than negligence concurring with that of defendant's servant. Defendant insists that the daughter was violating the statute and that while her negligence is not imputable to plaintiff, defendant's servant was not negligent, and that if he were, the negligence of plaintiff's daughter, ''superseded, intervened and cut off any negligence on the part of the driver of respondent's truck, and therefore no concurrent negligence existed at the time of the collision.'' In other words, defendant contends that the negligence of the daughter was the sole, proximate cause of the collision.

The statute in controversy provides as follows:

"An operator or driver of a vehicle overtaking another vehicle going in the same direction and desiring to pass the same shall pass to the left of the vehicle so overtaken, provided that the way ahead is clear of approaching traffic, but if the way is not clear he shall not pass unless the width of the roadway is sufficient to allow his vehicle to pass to the right of the center thereof in the direction in which his vehicle is moving, and provided further, that no operator or driver shall pass a vehicle from the rear at the top of the hill or on a curve where the view ahead is in any way obscured or while the vehicle is crossing an intersecting highway. An operator or driver overtaking and desiring to pass a vehicle shall sound his signalling device and the operator or driver of the vehicle so overtaken shall promptly, upon such signal, turn his vehicle as far as reasonably possible to the right in order to allow free passage on the left of his vehicle. In municipalities, on highways where double lines of vehicles are possible, or on highways where vehicles are obliged to move in one direction only, when any vehicle has slowed down, or stopped, and the operator or driver thereof has signalled for making a left-hand turn as required herein, the operators and drivers of vehicles following such a vehicle and desiring to proceed along such highway, or to turn to the right on an intersecting highway, may pass such vehicle on the right thereof; provided that the operators or drivers of such vehicles shall slow down and proceed cautiously."

There is no question but that plaintiff's daughter drove her car out in front of the Tivis truck but this was not a voluntary act upon her part but was caused by the fact that said truck without warning of any kind came to a sudden stop and by the time plaintiff's daughter looked up and realized that defendant's truck was upon her, her car had started out in front of that truck. As we construe Mrs. Adamson's testimony, she was driving along the side of the Tivis truck and about even with the same but in a position that she could not see to the north on account of the obstruction caused by the cab of the Tivis truck. At the time that truck stopped she had not "nosed out" in front of it but as soon as it stopped she looked to see the cause for its so doing and at that time she had proceeded far enough so that she could see over the radiator of the Tivis truck and then for the first time saw defendant's truck coming. She testified that at this latter time she "had just started to nose out ahead of the truck." When the collision occurred she was two or three feet in front of the Tivis truck.

We might say that there is testimony tending to show that Mrs. Adamson was driving faster than the Tivis truck, leaving an inference that she intended to pass that truck on the intersection before she knew anything about the presence of defendant's truck but in con-

sidering the matter of a demurrer to the evidence we must take all of the evidence, together with every reasonable inference that may be drawn therefrom, in favor of plaintiff. Viewing the evidence from this light, it is apparent that Mrs. Adamson had no intention of passing the Tivis truck, her car at the time being approximately the same distance toward the west as the Tivis truck. We do not think the statute was intended to apply to a situation of this kind. There is nothing in the law preventing automobile traffic proceeding in double file. In fact, the statute seems to contemplate this in instance of this kind. If this were not permitted, serious congestion of traffic would frequently occur in our large cities. To hold that the statute governs in the situation before us, would result in requiring a person who is proceeding in double file across an intersection to drive in such a manner that he could stop so as not to move any distance out in front of the car to his side in the event the other car might, without any warning, make a sudden stop. A requirement of this kind would result in making it practically impossible for vehicles to go forward in cities in double file with any degree of speed and instead of double file driving decreasing traffic congestion, it would increase it and make such driving impracticable.

The statute applies to a situation where one vehicle overtakes another with the operator of the rear vehicle desiring to pass and provides that in going by the rear vehicle shall pass to the left of the one overtaken, with a proviso that a vehicle shall not be passed *"from the rear* . . . while the vehicle is crossing an intersecting highway."* (Italics ours.) The Adamson car was not passing the Tivis truck *"from the rear"* but was being driven along the side of it and by reason of the fact that the Tivis truck suddenly stopped without any warning, the Adamson car "nosed out" in front of it, the driver thereof not intending to pass the truck. It would not only be against the letter of the statute to apply it to a situation of this kind but it would require a very unreasonable and a strained construction of it. While the statute is intended to protect drivers of vehicles and pedestrians traveling at intersections where the view is obstructed, there could be no deception where traffic is traveling double file as in this case, for that would be quite evident to a driver approaching an intersecting street. The statute must be given a reasonable construction and should not be interpreted so as to unnecessarily produce harsh and unreasonable results or be construed so as to result in absurdity or impose unnecessary burdens and those not intended by the lawmakers. [Stack v. Gen. Baking Co., 223 S. W. 89; Rutter v. Carothers, 223 Mo. 631, 634; Johnson v. Ragan, 265 Mo. 420, 435; St. Louis v. Christian Brothers College, 257 Mo. 541, 552; Keeney v. McVoy, 206 Mo. 42, 68; Gist v. Construction Co., 224 Mo. 369, 379; Kempa v. City of St. Joseph, 178 Mo. App. 292.]

Taking the evidence in the most favorable light to plaintiff, it is apparent that Mrs. Adamson was not violating the statute at the time in question and was not guilty of any negligence as a matter of law. While she admitted that she could have stopped her car within one or two feet and there is no evidence that she attempted to stop it, she cannot be convicted of negligence as a matter of law in failing to do so. She did not fail to take any means to avert the collision but attempted to turn her car to the south. If she committed error in turning to the south instead of attempting to stop, it was an error of judgment, which under the circumstances could not be declared negligence as a matter of law. It must be remembered that she was suddenly placed in a position of danger by the negligence of defendant's servant, with the traffic against him, bearing down upon her without warning and with her view obstructed. [Smith v. Chicago, Great Western Rd. Co., 282 S. W. 62, 64; Norton v. Davis, 265 S. W. 107.]

There is no question but that defendant's servant was negligent and that his negligence was at least a proximate cause of the collision. The question of proximate cause is usually one for the jury but often it becomes a matter of law for the court. In a recent case, Mummaw v. Tel. & Tel. Co., 208 S. W. 476, 477, we stated, quoting from 1 Shearman and Redfield on Law of Negligence (6 Ed.), par. 39, 76.

" 'It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the "act of God" or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that, if the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage. But if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury.' " [See, also, cases cited in the Mummaw case and Willi v. United Rys. Co., 224 S. W. 86, 89; Safir v. Sieben, 233 S. W. 419, 423; Strother v. Sieben, 282 S. W. 502.]

In Mummaw v. Telephone Co., supra, we also stated, quoting from Benton v. St. Louis, 248 Mo. 98, 110—

" 'In cases of negligence, liability does not hinge on whether by the exercise of reasonable prudence, the very injury complained of ought

to have been foreseen. The party charged may be held liable for anything which, after the injury is complete, appears to have been a natural and provable consequence of his act or omission.' ''

Defendant's servant could have reasonably anticipated not only that a collision might take place if, with the traffic against him, he proceeded into the intersection at a high rate of speed without sounding any warning, but we think that he could have reasonably anticipated the very collision that occurred. He was coming down a hill and saw or could have seen the position of these two streams of automobiles proceeding towards the west on 18th street. Knowing that traffic was proceeding on 18th street in double file, he could have seen that the view of the driver of the automobile to the south of the Tivis truck was obstructed and could have anticipated that if he attempted to cut in front of that truck without any warning, the automobile in which plaintiff was riding might proceed on out in front of the Tivis truck, resulting in a collision. We think that it would be hard to imagine a case, at least one for the consideration of the jury, where such negligence could be more clearly a proximate cause of a collision, and this is true even were we to assume that Mrs. Adamson was guilty of negligence.

It is insisted that the evidence shows that defendant's truck was equipped with a double reduction internal gear drive and it could not be run in excess of fourteen miles per hour while in gear and that if the gear was disconnected in going down hill, it would tear the axle loose. However, this was defendant's testimony. There was other testimony tending to show that a truck of this character could be proceeding down hill at a speed of from thirty to thirty-five miles per hour. In view of the fact that there was testimony that it was proceeding at a speed of twenty-five miles per hour, this evidence within itself, was sufficient from which the jury could say that the testimony on the part of defendant that it could not be operated in excess of fourteen miles per hour was untrue. While there was no ordinance requiring defendant's truck to stop or sound any warning under the circumstances, his failure to do so was for the jury's consideration, as common-law negligence. [Hammond v. Dry Goods Co., 240 S. W. 170.]

We think, however, that plaintiff's instruction A was erroneous. This instruction purports to cover plaintiff's entire case and direct a verdict. It first has the jury find the operation of the Adamson automobile across the intersection at the center thereof and that—

'' . . . the said agent and servant of the defendant, if so, negligently drove said truck into said intersection and into violent collision with the automobile in which plaintiff was riding, if so, and as a direct result thereof plaintiff was injured, if so, then your verdict will be for the plaintiff.''

The petition does not plead that the servant of the defendant "negligently drove said truck into said intersection and into violent collision with the automobile in which plaintiff was riding." It does plead that defendant's truck was driven into violent collision with the automobile in which plaintiff was riding but does not allege that "defendant's servant negligently drove said truck into said intersection." Of course, this last quoted part of the instruction in reference to the driving of the truck into the intersection allows the jury to find any facts or state of facts that it might deem to be negligence in driving the truck into the intersection while the petition pleads specific acts of negligence in reference to the driving of the truck into the intersection. It pleads that defendant's servant failed to stop the truck or to slow down the same or to sound a warning before driving into the intersection; that he negligently failed to wait until plaintiff crossed the intersection before driving the truck into the intersection; that he negligently failed to stop the truck or swerve the same aside or slow it down before driving into the intersection, and that he negligently drove the truck into the intersection and into violent collision with the automobile when he saw or could have seen plaintiff in a position of peril, etc. This last allegation is one under the humanitarian theory, which was not submitted in the instruction. It also pleads that the truck was driven into the intersection at a high and negligent rate of speed and in violation of an ordinance providing for a speed of ten miles an hour under the circumstances.

It is a rule that an instruction must not be broader than the petition. [State ex rel. v. Ellison, 270 Mo. 645.] Owing to the fact that the instruction submits the negligent driving into the intersection conjunctively with the driving of the truck into violent collision with the automobile, we might ignore the submission of the negligent driving into the intersection as merely requiring the finding of an additional fact and placing an unnecessary burden upon plaintiff, were plaintiff entitled to submit in the instruction merely that the truck was driven into violent collision with the automobile. There is an allegation in the petition that the truck was negligently driven in violent collision with the automobile, but plaintiff admits this to be an allegation of general negligence. There is no rule better settled than that where the petition contains an allegation of general negligence coupled with specific acts of negligence, the case cannot be submitted under the allegations of general negligence but must be submitted under the specific acts of negligence pleaded. [State ex rel. v. Trimble, 302 Mo. 8, 17.] The instruction fails to submit the specific acts of negligence pleaded and therefore it is erroneous. [Ravenscraft v. Railroad, 27 Mo. App. 617; Lauff v. Carpet Co., 186 Mo. App. 123, 136, 137, 138; Conway v. Ry. Co., 161 Mo. App. 501;

Detrich v. Railroad, 143 Mo. App. 176, 180; Feldewerth v. Railroad, 181 Mo. App. 630, 640, 641.]

The court was not justified in granting a new trial on the ground that he assigned therefor, but as plaintiff's instruction is erroneous, the judgment granting defendant a new trial will be affirmed and it is so ordered. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

## ON MOTION FOR A REHEARING.

BLAND, J.—In her motion for a rehearing plaintiff insists that the allegation in the petition, taken with the other facts alleged, that defendant's servant "negligently drove said truck into violent collision into the automobile in which plaintiff was riding," is an allegation of a specific act of negligence.

In her reply brief plaintiff stated in reference to this allegation as follows:

"Defendant insists that this instruction is broader than the petition in that the petition charges negligence in driving into collision with the automobile in which the plaintiff was seated while the instruction requires a finding of negligence in driving into collision with the automobile and also negligence in driving into the intersection.

"It is apparent at a glance that there is no merit in this contention. An allegation that one negligently drove a truck into collision with an automobile is as broad and general an allegation as can be conceived of. It would admit proof of any manner of negligence in driving a car into collision with another car. Under such an allegation one could prove that a collision occurred in an intersection or anywhere else in the world while under an allegation of negligently driving into an intersection, one would be confined to proof of negligence resulting in a collision in an intersection. The contention that an instruction requiring a finding that defendant negligently drove into the intersection is broader than an allegation of negligence driving into collision with an automobile is absurd. It is true plaintiff's petition contained many other allegations of specific negligence but proof of one of these acts of negligence is all that is required of the plaintiff and she was entitled to go to the jury on the one specific act of negligence of driving into the intersection when traffic was against him as she did in this case. The instruction was therefore proper."

Plaintiff having submitted the case to us on the theory that said allegation in the petition was general and procured a decision from us on that theory cannot now change her theory and thus obtain a rehearing. There must be some end to litigation in this court. [Melville v. Assur. Co., 253 S. W. 68; Phippin v. Ry. Co., 196 Mo. 321, 350; Boucher v. Ry. Co., 199 S. W. 742.]

The motion for a rehearing is overruled.