JOHN A. HOGAN, Appellant, v. FRED W. FLEMING and FRANCIS M. WILSON, Receivers of the Kansas City Railways Company, a Corporation, Respondents.*

Kansas City Court of Appeals. June 16, 1924.

1. **NEGLIGENCE:** Failure to Stop Street Car so as to Give Police Patrol, Which it Was Running Toward, Right of Way, Held Violation of Ordinance. In an action for damages for personal injuries to a police officer riding in police patrol automobile which collided with street car, the failure of motorman to stop street car to give patrol, which it was running toward, the right of way, between loading docks located alongside tracks to permit passengers to alight from and board street cars, *held* violation of city ordinance giving right of way to police vehicles, particularly as there was a custom shown requiring street cars to stop, and custom of police vehicles to use the center of the street.

2. ————: Evidence: Refusal to Permit Driver of Police Patrol to Testify That He Expected Street Car to Stop, Held Error. Refusal to permit driver of patrol to state that he was expecting the street car to stop when he approached North end of narrow passageway between loading docks and before street car reached South end thereof and obstructed the same, *held* error.

3. ————: Pleading: Petition Held to Charge Negligence of Motorman in Failing to Stop Street Car Upon Approach of Police Patrol Which Had Right of Way. In view of the superior right of way given police patrol over street car by the common law, as a matter of necessity, petition *held* to allege negligence of motorman in failing to stop street car upon approach of patrol.

4. **PLEADING:** Custom: Unnecessary to Plead Custom Where it is Merely Evidentiary. It was not necessary to plead the custom giving police vehicles right of way over street car for the reason that it was merely evidentiary.

5. **MUNICIPAL CORPORATIONS:** Ordinances: Right of Way of Public Vehicles Held Not Restricted to Vehicles Bound in Same Direction. Ordinance providing that vehicles should be driven to the right of the center of street *held* not to restrict right of way given to such vehicles by another ordinance to a right of way over all vehicles and traffic bound in the same direction.

6. ——: ——: **Traffic Regulations Not Applicable to Police Patrol Vehicles.** Ordinary traffic regulations are not applicable to public vehicles such as police patrols.

7. **NEGLIGENCE: Intervening Cause: Act of Pedestrian in Stepping in Front of Police Patrol Held Not Independent, Intervening Cause of Collision Between Patrol and Street Car.** Act of pedestrian in stepping off loading dock in front of rapidly approaching patrol vehicle, which was swerved to the left in order to avoid striking him, *held* not independent intervening cause of collision between patrol and street car, running in opposite direction, which failed to stop.

8. ——: **Negligence of Driver of Police Patrol Not Imputable to Police Officer Whose Duty It Was to Ride Therein.** Where it was police officer's duty to go with patrol wherever it was driiven by police chauffeur, over whom he had no control, his negligence in driving patrol could not be imputed to police officer riding therein.

---

*Headnotes 1. Street Railroads, 36 Cyc., p. 1513; 2. Street Railroads, 36 Cyc., p. 1595; 3. Street Railroads, 36 Cyc., p. 1573; 4. Pleading, 31 Cyc., p. 49; 5. Municipal Corporations, 28 Cyc., p. 915; 6. Street Railroads, 36 Cyc., p. 1559; 7. Street Railroads, 36 Cyc., p. 1597; 8. Negligence, 29 Cyc., p. 548.

Appeal from the Circuit Court of Jackson County.—*Hon. Willard P. Hall*, Judge.

REVERSED AND REMANDED.

*Kelly, Buchholz, Kimbrell & O'Donnell* for appellant.

*Charles N. Sadler, John R. Moberly* and *Roscoe P. Conkling* for respondents.

BLAND, J.—This is an action for damages for personal injuries. At the close of all the testimony the jury in response to a peremptory instruction returned a verdict for the defendants. Plaintiff has appealed.

The evidence taken in its most favorable light to plaintiff shows that he was a police officer riding in the front seat of a police patrol automobile, driven by a

police chauffeur by the name of Pyeatt, about noon of the 16th day of February, 1921. The patrol wagon had a large body mounted on a Packard chassis. The body had printed on each side the words "Police Patrol." It was equipped with a gong and a siren. The siren when sounded could be heard for five or six blocks. At the time of the collision of the patrol wagon with one of defendants' street cars, the former was being driven by Pyeatt south on Grand Avenue, a north and south street in Kansas City, Missouri, astride the west rail of the southbound street car track, there being double tracks on said street. The patrol wagon was going to 12th and Oak Streets in answer to a call and Pyeatt was blowing the siren intermittently. When the patrol wagon reached 10th Street a woman started to cross the street in front of it, which required a slowing up of the wagon.

Between 10th and 11th Streets on Grand Avenue and about 100 feet south of 10th Street were located wooden docks constructed to facilitate the loading of passengers on and off street cars and for the safety and convenience of the public. They constituted safety zones. These docks were from eighty to 100 feet long, four feet wide and six inches high and were opposite each other, one on the west side of the southbound car tracks and the other on the east side of the northbound car tracks. The docks were located close enough to the outside rail so that passengers alighting and boarding cars could step from the dock to the step of the street car and vice versa. Grand Avenue between 11th Street and 12th Street was about seventy-five feet in width but the distance between these two streets is not shown in the testimony. The distance between the two docks was eighteen or twenty feet. When a northbound street car was in the space between the docks it would leave a space of about ten feet between the street car and the west dock. A building was being repaired on the west side of Grand Avenue and a temporary sidewalk had been constructed in the street, adjacent to the regular sidewalk, narrowing the

space on the west side of the west dock where vehicles traversed. It was not definitely stated whether this temporary sidewalk was opposite the dock or north of the same, but it so narrowed the space for traffic that only one automobile at a time could go through.

At the time in question there were twenty to forty people standing on the west dock. The docks were located in the down-town congested part of the city. It was at noon and a great many people were upon the street, coming and going from department stores in the neighborhood. It was a bright day and there was a continuous stream of travel at that hour; there were automobiles going north and south on their respective sides of the street and a pedestrian trying to cross the street would be required to be very careful.

When the patrol wagon passed the north end of the west dock a man stepped from a point a short distance south of the north end of the west dock into the street, walking in an easterly direction with his head down and in front of the patrol wagon. There was testimony that when this man stepped off the dock he was twenty feet away from the patrol wagon and other testimony that he was six to ten feet away. The driver of the patrol wagon testified that he was proceeding at the rate of fifteen to seventeen miles an hour while there was testimony on the part of the defendants that he was going from thirty-five to fifty miles per hour. However, in order to avoid striking the pedestrian he swerved his car to the east and ran into the front end of a street car proceeding in the opposite direction upon the tracks immediately to the east of the center of the street, entirely demolishing the patrol wagon and doing serious injury to the street car, which was at that time going, so the evidence shows, at about five, six, or eight miles an hour. At the time the patrol wagon swerved it was fifteen to thirty feet away from the street car. The collision resulted in injuries to the driver of the wagon and plaintiff. While it seems that the police chauffeur saved the life of the

pedestrian the former did not prevent the latter's injury, for the reason that as the front end of the patrol wagon turned and missed him the rear end swerved around and the side of the wagon struck the pedestrian, causing his injury. The patrol wagon reached the docks before the street car. When the patrol wagon was crossing 10th Street a traffic policeman at 11th Street and Grand Avenue was blowing his whistle to clear the traffic so that the patrol wagon would have the right of way.

Defendants' witness Stock testified that he was riding in the vestibule of the street car; that the car had come to a stop before it crossed the intersection of 11th Street. The motorman testified that he was given the signal to proceed across by the traffic policeman at that street. Stock further testified that the street car was going very slowly and that he did not hear the siren; that he saw the man step off the loading dock and at that time said, "that guy is going to get hit;" that the street car continued to proceed; that he noticed the automobile that afterwards struck the man when the street car arrived at a point five or ten feet north of 11th Street; that the automobile was coming down the west car tracks; that at that time the automobile was at about 10th Street but that it did not seem to slacken its speed until it struck the street car.

There was other evidence that when the patrol wagon reached the north end of the dock, the street car had not reached the south end but was near thereto. The street car could have been stopped almost instantly. Plaintiff sought to prove by the chauffeur that at this time he was expecting the car to stop but over the objection of the defendants the court refused to permit the plaintiff to make this proof.

An ordinance of Kansas City was introduced in evidence providing, among other things, that—

"Police, fire departments, fire patrol, United States mail vehicles and ambulances shall have the right of way in any street.

"That upon the approach of any fire apparatus, police patrol or ambulance, every vehicle shall draw up as near as practicable to the right curb of the street and remain at a standstill until such apparatus, patrol or ambulance shall have passed.

"The driver of a street car shall immediately stop his car and keep it stationary upon the approach of any fire apparatus.

"Section 6. *Street Cars.* Street cars shall have the right of way, between cross streets, over all other vehicles, *except as provided in Section 5.*"

The ordinance made other provisions in reference to signal devices upon vehicles which prohibited the use of a siren except on public ambulances, fire and police vehicles and those required to respond to emergency calls.

There was testimony, in fact, it is undisputed, that it was the custom for operators of street cars upon hearing the approach of a fire or police vehicle or ambulance to give it the right of way by bringing the street car to a stop. The motorman, testifying for the defendants, stated that there was such a custom and that the defendants gave their motormen a book of printed rules which instructed their motormen to stop their cars when they should hear a police or other siren. He further testified that whenever he heard a siren it was his custom to stop his car, and that if he had heard the siren in this instance he would have immediately brought his car to a stop upon first hearing it. There was ample testimony tending to show that the motorman could have heard the siren had he been attentive. The testimony shows that he could have heard it for several blocks. It was being sounded intermittently, and especially at 10th Street where a woman attempted to cross the street. There were witnesses who were standing near the place of the collision who heard the siren as the patrol wagon approached.

We think that the court erred in sustaining the demurrer to the evidence. Under the provisions of the

ordinance introduced in evidence there is no question but that the patrol wagon had the right of way over the street car. The ordinance seems to expressly require a street car to come to a stop upon the approach of a fire apparatus but does not mention police vehicles in this connection. However, there was a custom shown requiring street cars to come to a stop under the circumstances, and we think that even under the ordinance the motorman was guilty of negligence that contributed proximately to plaintiff's injury. The ordinance requiring all vehicles except street cars, which run upon fixed tracks, to draw to the curb and remain at a standstill while a police patrol vehicle is passing, contemplates that such vehicle shall occupy the center of the street and, aside from this, there was a custom shown for patrol wagons to drive in the center of the street.

Here was a street that had been partially obstructed for vehicular traffic by reason of the fact that docks had been constructed in it. The motorman knew of this situation. He also heard, or should have heard, or saw or should have seen, the patrol wagon approaching and being driven near the center of the street. He saw that the passageway between the west dock and the curb was obstructed so that it was wide enough for the passage of only one vehicle at a time, which necessarily made it dangerous for a vehicle of the size of the patrol wagon going at a high rate of speed to pass through. The patrol wagon being in the center or near the center of the street, would naturally be expected to pass between the loading docks instead of to the right thereof, especially in view of the custom and ordinance contemplating that the patrol wagon should occupy the center of the street. The motorman should have seen the patrol wagon approaching into this narrow space between the loading docks, and should have known that if he continued to propel his street car until it also got in between the docks, that the space would be narrowed to ten feet.

The street was crowded with vehicles and a great many pedestrians. The motorman could have reasonably

anticipated that some one might step off the loading dock just as did the pedestrian in the case at bar, so near and in front of the rapidly approaching patrol wagon that it would be impossible for it to stop in order to avoid striking him. While, perhaps, no one would be expected to get into this space so near the patrol wagon without negligence, still under the circumstances the motorman might have anticipated something of this kind as such heedlessness on the part of pedestrians is a very common thing, so common in fact that it has been necessary for our public authorities to enact statutes, ordinances and regulations for the movement of vehicles, having in contemplation the fact that pedestrians are frequently guilty of conduct similar to that of the pedestrian in this case. Our humanitarian doctrine takes cognizance of the negligence of pedestrians and the books are full of such cases. It is natural for vehicles of the kind plaintiff was riding in, going at a high rate of speed, to swerve and swing. For the motorman to have so conducted his car as to leave only a narrow space of ten feet in which to allow the patrol wagon to pass, in view of the fact that the patrol wagon had the right of way, was clearly a violation of the ordinance and of the custom proven.

The situation of the motorman in approaching these loading docks under the circumstances was not materially different from that of a street car approaching an intersecting street crossing at right angles. Under such circumstances there have been a number of cases in this State holding that it is necessary for the street car to come to a stop upon hearing the alarm given by an approaching fire or police vehicle. [See Nolan v. Kansas City Rys. Co., 247 S. W. 429; Duffy v. Kansas City Rys. Co., 217 S. W. 883; Green v. United Rys. Co., 165 Mo. App. 14; Michaels v. Railroad, 161 Mo. App. 53; Taylor v. Railroad, 166 Mo. App. 131.] Where a street car obstructs such a vehicle at a street crossing the violation of the right-of-way regulation is clear. But such obstruc-

tion may be only a partial obstruction, depending upon the extent to which the street car obstructs the crossing. Here the passageway between the docks was not entirely obstructed by reason of the street car going in between them, but it was beyond question partially obstructed and even though the ordinance may not require a street car to come to an absolute stop under all circumstances upon the approach of a police vehicle, as it gives such vehicle the right-of-way, there is no doubt that the ordinance was violated by the motorman obstructing the narrow passageway between the docks even though such obstruction was only partial. There is no difference in principle between obstructing the passage of a public vehicle *between* street intersections as this obstruction was and in obstructing it *at* a street intersection.

We think, too, that the court erred in refusing to permit the driver of the patrol wagon to state that he was expecting the street car to stop when he approached or reached the north end of the loading docks prior to the time the street car reached the south end, or, in other words, prior to the time the street car obstructed the narrow passageway. This is material as throwing light upon the action of the driver of the patrol wagon in not slowing up his speed so that in case a pedestrian got in front of his car, or a like emergency arose, he could stop it or if he did not slow it up, he could swerve it aside along the unobstructed space where the northbound tracks were situated. It is true that the driver of the patrol wagon saw the street car at all times and saw that it did not stop and that it was continuing to go forward even at the time he struck it, but he knew that he had the right-of-way and could assume when he saw the street car approaching that it would stop before it reached the docks. It was proper to show that he thought the street car would stop at least prior to its reaching the docks (Vansickle v. Brown, 68 Mo. 627, 634), whether or not it was proper to show what he thought after that time. In this sense the failure of the street to stop

deceived the driver of the automobile and in this respect the motorman's conduct in failing to stop was deceptive and was negligence on his part.

The petition describes the situation of the street railway tracks and the loading docks and then pleads the ordinance of Kansas City that we have mentioned. The petition then pleads that the loading docks were so near together that a northbound street car passing through so narrowed the passageway that the southbound patrol wagon going rapidly could not safely proceed southward between it and the loading dock; that defendants knew, or by the exercise of ordinary care could have known, that there was a practice relied on by plaintiff that operators of street cars, when a police automobile was approaching, would bring the street car to a stop and thus give the right-of-way to the approaching police vehicle. It then pleads that police automobiles are driven by officers designated by a superior officer, and that it was plaintiff's duty when ordered by a superior officer to take his seat in the patrol wagon and to permit himself to be driven by the driver designated by plaintiff's superior officer at such points as was necessary for him to go in answer to what is known as an emergency call, and that plaintiff was going in answer to an emergency call at the time of the collision; that plaintiff had no control or supervision over the driver; that plaintiff was driven by a properly designated driver and at a very rapid rate of speed and as the patrol wagon was being driven through the narrow passageway a northbound street car approached the opening between the docks; that it was the duty of the motorman to stop the street car and permit the patrol wagon to have the right-of-way through the opening; that the motorman knew before he drove his street car into the narrow passageway between the loading docks, or should have known, that the patrol wagon was proceeding through the passageway between the docks at a very high pace and that the driver of the patrol wagon expected the motorman to stop at a point

south of the loading docks to give the patrol wagon the right-of-way, but that the motorman—

". . . carelessly and negligently failed to stop said car and drove the same at a rapid pace northward over the northbound tracks, and between the board sidewalks aforesaid, so that the police patrol in which plaintiff was riding and the street car, so negligently driven into the space between said board sidewalks, came into collision, and plaintiff was thereby thrown violently from the vehicle and plaintiff was crushed and injured as follows, to-wit:"

Defendants claim that the petition does not allege negligence in violating either the custom or the ordinance; that no violation of the custom was alleged but that the petition in the charging part thereof merely alleges a duty to permit the automobile to have the right-of-way and that the motorman negligently failed to stop so that the automobile and the street car came into collision. Without attempting to analyze the petition in order to say what negligence is charged as causing the injury, we think that even though the petition were construed as desired by defendants, plaintiff made out a case regardless of the existence of any ordinance or custom. By the common law, as a matter of necessity, firemen, policemen and ambulance drivers, and drivers of public vehicles of that nature, are given the right-of-way over street cars and are not to be regarded in the same light as pedestrians, drivers of other ordinary vehicles and street car motormen as none of these has a superior right-of-way over the other. [Duffy v. K. C. Rys. Co., supra; Michaels v. Railroad, supra; Green v. United Rys. Co., supra; Taylor v. Railroad, supra.] Aside from this, it was not necessary to plead the custom for the reason that it was merely evidentiary. [Caldwell v. Payne, 246 S. W. 312, 317; Brunke v. Telephone Co., 115 Mo. App. 36.] There was no objection to the proof of the custom, so it seems that the contention that the matter of custom was not an issue is an afterthought.

Defendants call our attention to section 9 of the ordinance which provides that vehicles shall be driven in a careful manner and to the right of the center of the street, and directs us to the fact that this part of the ordinance does not expressly exempt any person from its terms and that no exception is made in favor of police vehicles. Therefore, the defendants contend that the patrol wagon had no right-of-way on the left of the center of Grand Avenue, the place it struck the street car. It is contended that the ordinance fairly contemplates that police vehicles shall have the right-of-way between intersections over all traffic "bound in the same direction" but does not contemplate that police vehicles should have the right-of-way over street cars and vehicles on the opposite side of the street and going in the opposite direction; that where the collision occurred there was no street intersection and no conflict in traffic. We think this is entirely too narrow a construction to put upon the right-of-way that the patrol wagon had in this instance. The evidence shows, as we have already stated, that it was the custom for these vehicles to drive in the center of the street, and the ordinance evidently contemplated this as it requires all other vehicles except street cars to pull to the curb upon the approach of police, fire, ambulance or mail vehicles. (It will be noted that all of these vehicles are treated in the ordinance as of the same kind and character.) The motorman himself testified that it was his duty to bring his car to a stop when he heard the siren. He did not attempt to restrict this obligation in any way, but as we construe his testimony it means that regardless of where the vehicle may be or from whence approaching, it was his duty to stop his car. It is well settled that ordinary traffic regulations are not applicable to public vehicles of this kind. [Green v. United Rys. Co., supra; Kansas City v. McDonald, 60 Kans. 481; State v. Sheppard, 64 Minn. 287; Farley v. The Mayor, etc., 152 N. Y. 222; Toledo Railway & Light Co. v. Ward, 25 Ohio Cir. Ct. Rep. 399.]

There is no merit in the contention that the motor-man could not have anticipated that the patrol wagon might leave the right-hand side of the street and go over to the left side and collide with the street car. This contention is related to another contention of the defendants, to-wit; that the action of the pedestrian in negligently putting himself in front of the rapidly approaching patrol wagon and the swerving of the patrol wagon were the proximate cause of the injury. The question of proximate cause is usually one for the jury but sometimes becomes one for the court. On this subject it is stated by a well-known author—

"If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another. If it could not have been thus anticipated, the intervening negligent person alone is responsible." [Shearman & Redfield on the Law of Negligence (6th Ed.), sec. 34, p. 68.]

And in Benton v. St. Louis, 248 Mo. 98, 110—". . . in cases of negligence, liability does not hinge on whether, by the exercise of reasonable prudence, the very injury complained of ought to have been foreseen. The party charged may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission." [See, also, Mummaw v. Tel. Co., 208 S. W. 477, and cases cited

therein, and Miller v. United Rys. Co., 155 Mo. App. 528;
Buckner v. Horse & Mule Co., 221 Mo. 700; Obermeyer v.
Logeman Chair Co., 229 Mo. 97; Smith v. Mederacke, 259
S. W. 83.]

We do not think that the acts of the pedestrian and
the swerving of the police patrol were an independent in-
tervening cause. The injury to plaintiff would not have
happened if it had not been for the negligence of the
motorman. From what we have said the motorman
could have reasonably anticipated that some such hap-
pening would occur as that of a pedestrian stepping off
the loading dock in front of the rapidly approaching pa-
trol wagon. It was not necessary for the motorman to
have foreseen the very thing that occurred but after the
injury is complete he is held to have anticipated any-
thing that appears to have been a natural and probable
consequence of his act or omission. It is therefore seen
that the act of the pedestrian and the swerving of the
automobile were not separately or combined an independ-
ent and intervening cause, but it now appears that the
injury was the ordinary, natural and probable conse-
quence of the act of the motorman. There is no conten-
tion that plaintiff was guilty of contributory negligence,
but of course the negligence of the driver of the police
patrol is not to be imputed to plaintiff. [Burleigh v.
Transit Co., 124 Mo. App. 724; Dickson v. Railway, 104
Mo. 491.] It was shown in the evidence, as alleged in
the petition, that it was plaintiff's duty to go with the
patrol wagon wherever it was driven by the police chauf-
feur and that he had no control over the latter. Of course
there was nothing plaintiff could do to avoid the acci-
dent after he saw and realized that the police chauffeur
was swerving his car, the time that transpired was too
short for him to have done anything to protect himself,
at least, the jury could have so found. It is, therefore,
unnecessary for us to say whether or not the action of
the police chauffeur in swerving his car was or was not
negligent or was done merely from a humanitarian mo-

tive. It would seem however that the swerving was not negligent but done instantaneously without time for thought and merely from a natural impulse to avoid running over the pedestrian.

Defendants contend that the negligence, if any, of the motorman did not contribute as the proximate cause of the injury for the reason that it would have made no difference where the street car was when the collision occurred, whether between the loading docks or south thereof; that the collision would have happened anyway, therefore, his failure to stop the car had nothing to do with the injury. We think there is no merit in this contention. This contention is based on the argument that the speed of the patrol wagon was not slackened, that the patrol wagon was going at such high rate of speed that the collision demolished and injured the street car and did other damage and that the speed of the patrol wagon was so great that even had the street been south of the loading dock the collision would have occurred as the patrol wagon would not have been propelled out of the path of the car. But there was evidence that the patrol wagon was going only fifteen miles an hour and the jury could have readily found that had the street been south of the dock the patrol wagon could have been swerved over to the east side of the street or back again into its original path.

We have examined the cases of De Moss v. Kansas City Rys. Co., 246 S. W. 566, and Borack v. Safe Co., 288 Mo. 83, cited by the defendant and find that they are not in point. In the former case the negligence relied upon by plaintiff was the starting of the street car forward into an intersecting street upon which plaintiff was approaching in an automobile, without the motorman looking in the direction from which the automobile came before starting his car and without the giving of any warning. In that case it was held that the automobile had no superior right in the street and the automobile was far enough away at the rate of speed it was approaching to have stopped before striking the street car had

the automobile had chains on it, the street being slippery. The motorman, if he had looked, would not have known that the automobile would skid into the street car. It was held that if the motorman was negligent in driving into the intersection under the circumstances, that it was not his negligence but the skidding of the automobile that caused the injury. In the latter case the negligence of the driver of a truck was in turning his team to the left of the center of an intersecting street, but it was not this negligence that caused the injury but the slipping of the horse causing it to fall against the wagon tongue. The end of the tongue struck plaintiff's husband causing his death. In that case the negligence of the driver in turning to the left of the center of intersecting streets had ceased at the time the horse slipped. There was no causal connection between the negligent turning of the truck and the slipping of the horse. It is quite apparent that these two cases are entirely unlike the case at bar.

Plaintiff's abstract of the record is attacked because it does not bring up a diagram showing the situation of the docks. This diagram was used in explaining a witness's testimony but was not introduced in evidence and never became a part of the record. We are able to understand the testimony of the witness without the diagram.

The judgment is reversed and the cause remanded. All concur.