MARGARET McCLOSKEY, RESPONDENT, v. GRANT RENNE ET AL., APPELLANTS.—37 S. W. (2d) 950.

Kansas City Court of Appeals. January 5, 1931.

*John C. Nipp, Charles N. Sadler* and *E. E. Thompson,* for respondent.

*Mosman, Rogers & Buzard* for appellants.

BLAND, J.—This is an action for wrongful death. At the conclusion of plaintiff's testimony the court gave a peremptory in-

struction on behalf of the defendant, Elizabeth Allen and, thereafter, the cause proceeded against the remaining defendants, Grant Renne and Harry Renne (hereinafter called the defendants). At the conclusion of all of the testimony there was a verdict and judgment rendered in favor of the plaintiff in the sum of $5,000. Defendants have appealed.

The evidence shows that plaintiff is the sole surviving parent of James McCloskey, for whose death she sues; that deceased was sixteen years of age lacking three days on the day of his death; that on the morning of that day deceased, together with other young people, had attended a wedding breakfast; that after this affair Elizabeth Bickett (now Elizabeth Allen) borrowed an automobile from a friend and invited another girl, Alleta Todd, and deceased to accompany her to her home to obtain some signs to put upon "the wedding car;" that they accepted and all got in the automobile; that Elizabeth Bickett was at the wheel, deceased in the front seat to her right and the other girl in the back seat.

Eighteenth street and Montgall avenue are two public thoroughfares in Kansas City which intersect, the former extending east and west and the latter north and south. After starting to her home Elizabeth Bickett drove the automobile, with her companions, north on Benton boulevard and thence in a westerly direction on Eighteenth street. When she approached the intersection of Montgall avenue she turned to drive south upon that street. At the intersection of these two streets there was a jog so that the west line of Montgall avenue extending north of Eighteenth street was a little west of the west line of the avenue extending south of said street.

When Miss Bickett was on the north side of Eighteenth street north of the double car track thereon and "a little" east of the center of the intersection of the two streets she gave a signal by horn and hand and turned in a circle to the left to enter Montgall avenue. When she started to make the turn a man, going west, stepped off of the curbing on the southeast corner in front of the car. He stepped backward and then started forward again. Miss Bickett turned or swerved the car to the right, or in a southwesterly direction, in an effort to avoid striking the man, meanwhile sounding her horn, and in so doing the automobile collided with the ends of large timbers extending from the rear end of a truck which had been parked and was standing upon the west side of Montgall avenue, immediately south of Eighteenth street. The truck was loaded with timbers of various dimensions and among them were two long pieces described as being 8x16 inches and twenty-four feet in length. They extended beyond the rear end of the truck, according to plaintiff's evidence, a distance of from five to eight feet, and defendants admit that they extended a distance of seven feet. When the collision occurred these timbers entered the automobile over the hood of the car and through

the windshield, one of the timbers extending into the car between the occupants of the front seat and over the rear seat. There is an inference to be drawn from the testimony that the other timber also entered the car, struck and injured deceased, who died shortly thereafter.

The evidence shows that the automobile was running at the rate of about ten to fifteen miles per hour. It stopped with about half of its length north of the sidewalk on the south side of Eighteenth street where the sidewalk extended east across said street. One witness for plaintiff testified that the automobile after the collision stood twenty, twenty-two or twenty-three feet from the west curb of Montgall avenue; that the automobile was on the east side of the street with its back end almost to the curb on the other side. Montgall avenue was thirty feet wide. The entire width of the truck was shown by defendants to be seven feet and six inches. It was twenty-one feet in length and its bed seventeen feet in length. The collision occurred about 11:00 o'clock A. M. The day was bright and the streets dry. The truck had been standing in its position for an hour or more before the collision. Defendant, Grant Renne, owned the truck and defendant, Harry Renne, who was his employee, placed the truck and left it standing in the street, under the direction of the owner, while preliminary preparations were being made to use the timbers in moving a house which stood near by.

There was evidence tending to show that there was no warning sign, such as a red flag, attached to the end of the timbers, but the evidence disclosed that Miss Bickett, the driver of the automobile, saw the truck and the timbers when she started to turn into Montgall avenue and the question of lack of warning as required by the ordinance was not submitted to the jury, but was withdrawn from its consideration.

The evidence shows that Miss Bickett was an inexperienced driver; that she had never driven an automobile save upon two former occasions; that deceased, who was her sweetheart, had been teaching her how to drive. Miss Bickett, whose name was Allen at the time of the trial by reason of her marriage after the collision in question, testified that deceased "had been showing me whenever we would drive," showing her how to drive; that he had helped her "to guide" and had taken the wheel before when she was driving.

Plaintiff's witness, Alleta Etherton, testified that when Miss Bickett turned into Montgall avenue "there was a man starting out from the street;" that Miss Bickett attempted to go around him but he dodged back and forth a time or two; that Miss Bickett was sounding her horn and proceeding forward during this time and deceased "took hold of the wheel to help her . . . and the car turned over in the direction of the truck." The witness was asked how the car was turned and she answered, "Well, Mr. McCloskey was

helping Miss Bickett drive." Mrs. Allen testified that deceased "grabbed" the wheel and the car crashed into the timbers. There was other testimony tending to show that deceased at no time touched the steering wheel.

The petition, among other things, pleads a violation on the part of defendants, Grant and Harry Renne, of the following ordinance of Kansas City:

"On all streets and boulevards vehicles shall when stopped stand as nearly parallel with the curb and immediately adjacent and as near the curb as is practicable and not nearer than four feet to either end of any other standing vehicle."

Defendants contend that their instruction in the nature of a demurrer to the evidence should have been given. In this connection they insist: That the alleged violation of the ordinance requiring the truck to be parked parallel with the curb was not the proximate cause of the collision; that the position of the truck at the curb created a condition but did not cause the accident; that an act of negligence creates no liability for an injury not shown to have been caused thereby; that there is no causal connection established between the act of these defendants and the injury occasioned but the evidence shows that said injury arose from other, and independent causes for which defendants are not responsible. Defendants contend that there were two intervening and independent acts superseding their act of negligence. (1) The act of the "man in stepping out in front of the automobile and dodging back and forth," (2) "the grabbing of the wheel by the deceased in an effort to avoid a collision with the man."

The question of proximate cause is usually one for the jury but often it becomes a matter of law for the court. In Mummaw v. Telegraph & Telephone Co., 208 S. W. 476, 477, it is stated from 1 Sherman & Redfield on the Law of Negligence (6 Ed.), par. 39, p. 76:

"It is universally agreed that, if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the 'act of God' or superior human force directly intervening, the defendant is nevertheless responsible, if his negligence is one of the proximate causes of the damage, within the definition already given. It is also agreed that, if the negligence of the defendant concurs with the other cause of the injury, in point of time and place, or otherwise so directly contributes to the plaintiff's damage that it is reasonably certain that the other cause alone would not have sufficed to produce it, the defendant is liable, notwithstanding he may not have anticipated or been bound to anticipate the interference of the superior force which, concurring with his own negligence, produced the damage. But if the superior force would have produced the same damage, whether the

defendant had been negligent or not, his negligence is not deemed the cause of the injury."

See, also, the cases cited in the Mummaw case; also Hogan v. Fleming, 317 Mo. 524; Hogan v. Fleming, 218 Mo. App. 172; Eagan v. Palmer, 293 S. W. 460; Willi v. United Rys. Co., 205 Mo. App. 272; Shafir v. Sieben, 233 S. W. 419, 423; Strother v. Sieben, 282 S. W. 502. In Mummaw v. Telegraph & Telephone Co., supra, this court also stated, quoting from Benton v. St. Louis, 248 Mo. 98, 110:

"In cases of negligence, liability does not hinge on whether, by the exercise of reasonable prudence, the very injury complained of ought to have been foreseen. The party charged may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission."

In Hogan v. Fleming, 317 Mo. 524, 536, the Supreme Court, quoted approvingly from 1 Sherman & Redfield, on the Law of Negligence (6 Ed.), p. 66, sec. 32, as follows:

"The connection between the defendants' negligence and the plaintiff's injury may be broken by an intervening cause. *In order to excuse the defendant, however, this intervening cause must be either a superseding or a responsible cause.* It is a superseding cause, whether intelligent or not, if it *so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree,* produces the injury. . . . But the connection is not actually broken, if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant't negligence is an essential link in the chain of the causation." (Italics ours.)

We think that in this case it was for the jury to say whether or not the negligence of defendants, in parking their truck in violation of the ordinance, contributed as one of the proximate causes of the death. This is true, although there may have been concurring or participating therewith other causes to bring about this result. We might say here that the evidence as to deceased taking hold of or grabbing the steering wheel is disputed, therefore, in ruling upon the propriety of the demurrer to the evidence, it will not be considred by us as one of the possible causes of the collision.

It is claimed by defendants that even though the truck was parked with its rear end and the end of the poles protruding out into the center of the street there was plenty of room left for an automobile to pass on the east side of the truck and the timbers and towards the south; that defendants could not have reasonably anticipated that a man would step out in front of an automobile, as was done in this case, should it be driven south over Montgall avenue. The evidence shows that Eighteenth street was a heavily traveled street. We think that defendants could have reasonably anticipated such an

occurrence as the one that happened. It was for the jury to say whether or not defendants could have reasonably anticipated not only that a collision might take place by reason of the parking of the truck in the way it was left on the street but that they could have reasonably anticipated a collision brought about by an occurrence of the nature shown in this case. Perhaps it would not have been anticipated that one would get in front of the automobile without negligence on his part, still, the defendants might have anticipated something of this kind, for such heedlessness on the part of pedestrians is a very common thing. Under the circumstances, we cannot say, as a matter of law, that the act of the pedestrian was an intervening cause. [Hogan v. Fleming, 218 Mo. App. 172, 179, 185.]

While defendants claim that it is a matter of speculation, at least, as to whether the injury would have happened had the truck been parked in a lawful way, we think there is no merit in this contention. The evidence shows that Montgall avenue was thirty feet wide and that the ends of the timbers were from twenty to twenty-three feet east of the west curb of the street. Assuming that they were twenty feet east of the west curb of that street, as the evidence shows that the truck was seven and one-half feet wide, there would have been twelve and one-half feet left between the space where the automobile attempted to go and the truck had the latter been parked parallel with the curb.

This evidence differentiates this case from the case of Lindman v. Carroll, 308 Mo. 187. That case involved the negligence of a contractor in placing in a street building material extending into the center of the street in an excessive way. An automobile proceeding along the street at a high rate of speed ran into a number of people, killing some and injuring others. Liability was attempted to be fastened upon the contractor on account of his negligence in piling the building material out into the street. The court said l. c. 200, 201:

"It may be that she (plaintiff) would have walked a foot and a half further south from the street car tracks than she did, if the sand and gravel had been confined within the ordinance limit. But whether in that contingency plaintiff would have escaped injury is a matter of pure conjecture. There is not a fact or circumstance in evidence which shows or tends to show, that if she had been a foot and a half further from the car tracks than she was she would not have been struck."

There was ample evidence in the case at bar tending to show, definitely, that, notwithstanding the act of the pedestrian, had the truck been parked in a lawful way the automobile would have passed on toward the south without colliding with it or the timbers.

There is no merit in the contention that the alleged negligence of Miss Bickett in failing to stop the automobile, as a matter of law,

was an intervening cause of the collision. She was proceeding at the rate of ten or fifteen miles per hour and was confronted with an emergency and, whether she should have attempted to stop as well as turn aside the car, under the circumstances, was a question for the jury. [Burge v. Wab. Ry. Co., 244 Mo. 76, 102; Eagen v. Palmer, supra.] If she was not negligent in failing to attempt to stop then such failure was not even a contributing cause of the collision but merely a circumstance that arose by reason of the negligence of the pedestrian.

Of course, under ordinary circumstances the negligence of the driver, if any, of an automobile is not imputable to a guest riding therein. [Hogan v. Fleming, 218 Mo. App. 172.] However, if deceased was guilty of contributory negligence, plaintiff cannot recover. There is some evidence tending to show that Miss Bickett was an inexperienced driver and that deceased knew this, but we cannot say that there was negligence, as a matter of law, on the part of anyone in the automobile. We think that the demurrer to the evidence was properly overruled.

Complaint is made of the giving of plaintiff's Instruction No. 3. This instruction reads as follows:

"The court instructs the jury that the burden of proving contributory negligence on the part of the deceased rests upon the defendants, to prove the same, by greater weight of the credible evidence, and in determining whether or not the deceased was guilty of contributory negligence or was in the exercise of due care; you will take into consideration, all of the facts and circumstances shown by the evidence; and if you find from the evidence, that the deceased, seeing a human being in a position of apparent and immediate peril, so placed through the negligence and carelessness of Elizabeth Allen, as described in other instructions, if you so find and if you further find that the deceased, in an effort to save a human life or injury to a human being placed in peril as aforesaid and acting without having an opportunity to deliberate, seized the steering wheel of the automobile in which he was riding, in his effort to turn the machine out of its course in such emergency, if any, and caused said automobile to plunge into the timbers on defendant Renne's truck, if you so find and if you further find that defendant Renne was guilty of negligence in so parking his car, as described in other instructions, if you so find and if you further find that the deceased acted as a person of ordinary prudence and discretion would have acted under like and similar circumstances, if you so find, you are instructed that deceased's conduct under such circumstances was not contributory negligence."

We think there is no question but that this instruction is erroneous. It will be noted that the instruction proceeds upon the theory that deceased seized the wheel but, in effect, assumes that he was

in the exercise of due care before the emergency arose. The "ordinary care" mentioned in the instruction had to do with the act after the peril of the pedestrian arose. One cannot claim an emergency or sudden peril to excuse an act that otherwise would have been contributory negligence if his own negligence contributed to bring about such emergency or peril. [Hall v. Ry. Co., 240 S. W. 175; Garvey v. Ladd, 266 S. W. 727, 731.] While, as before stated, the negligence of the driver of a car is not ordinarily imputable to a guest the latter is not always excused from responsibility for such negligence. The undisputed evidence shows that Miss Bickett was an inexperienced driver; that deceased had been teaching her how to drive and the witness, Alleta Etherton, testified that when he took hold of the wheel in this instance that he did so "to help her" (Miss Bickett), he "was helping Miss Bickett to drive." It will be remembered that Miss Bickett had only driven an automobile of any kind but upon two previous occasions and that deceased had been teaching her how to drive. However, there is no other evidence that deceased was instructing Miss Bickett on this occasion. In fact there is nothing in the testimony to show that the relationship existing between the two was anything other than driver and guest up to the time the emergency arose. Miss Bickett did not request deceased to accompany her on this ride in order to teach her how to drive but to go to her house to procure the signs, yet, there is much in the testimony from which a jury might say that Miss Bickett was an incompetent driver and that deceased knew it, all as pleaded in the answer. She had driven a car but twice before and when she got into a tight place deceased manifested his lack of confidence in her competency as a driver by seizing the steering wheel (if he did). While it cannot be said as a matter of law that one is guilty of contributory negligence in riding with another known to him to be an incompetent driver, yet, there may be many instances of such riding where a jury might well so conclude, especially considering what precaution the guest was taking in view of his knowledge of such incompetency. [Summerfield v. Flury, 223 N. W. 408, 411 (Wis.); Marks v. Dorkin, 136 Atl. 83 (Conn.); Ebert v. St. Ry. Co., 174 Mo. App. 45, 49; Jepson v. Shaw Trans. Co., 211 Mo. App. 366, 373; Ziegler v. United Ry. Co., 220 S. W. 1016.]

It may be fairly inferred from the testimony that deceased did nothing from the time Miss Bickett started to turn into Montgall prior to the time he seized the wheel (if he did). The jury might well say that she was guilty of negligence in turning into a thirty foot street with half or more of its width obstructed driving the car at the rate of fifteen miles per hour knowing that a pedestrian might step in front of her car. A jury might with equal propriety find Miss Bickett would have readily acquiesced in any action taken by deceased, he having theretofore acted as her instructor and she was

yet an inexperienced driver. The question then arises, did deceased use due care *as a matter of law* in permitting Miss Bickett, without any action on his part, to drive her car around the corner in the manner the evidence shows it was driven? We think not. It was a question for the jury and the instruction was erroneous.

The instruction is erroneous for another reason. It required the exercise of ordinary care only on the part of deceased at the time, whereas, he was required, under the statute, to use the highest degree of care in taking over the wheel, if this was an act of participation in the driving of the automobile. [Gude v. Weick Bros. Undertaking Co., 16 S. W. (2d) 59, 60.] Plaintiff insists that deceased was only a guest in the car and that the rule as to the highest degree of care in the operation of automobiles has nothing to do with the conduct of guests. However, there was room for the jury to find that deceased was occupying a position involving something more than a mere guest in seizing the wheel to avoid an impending collision. A jury could say that Miss Bickett was an inexperienced driver; that deceased knew this; that he had theretofore been her instructor, had taken the wheel before and perhaps felt free to interfere with her driving by taking over the steering wheel on this occasion when the emergency arose. It therefore cannot be said as a matter of law that he was not the driver of the car when it struck the timbers but rather indulging in a mere act or effort to deflect a dangerous instrument in motion.

Plaintiff insists that defendants are estopped from raising any point in reference to her Instruction No. 3 on account of certain instructions given at the request of the defendants, and in this connection points out certain instructions of defendants given on the theory that Miss Bickett was at the time and place in controversy the sole operator of the automobile. There are a great many instructions given on the part of defendants and reading them as a whole we construe them as an effort to submit the various theories of the case as disclosed in the testimony. Some of them were on the theory that Miss Bickett was the sole operator of the car (and there was evidence so showing as we have pointed out) and others that it was being jointly operated by the two. Defendants' Instruction T is on the theory that deceased "undertook the management and control of the automobile at the time in question." Defendants were within their rights in submitting to the jury instructions covering all phases of the case set forth in the pleadings and disclosed by the testimony and we fail to see any element of estoppel in the matter.

Plaintiff draws our attention to Instruction E given on behalf of defendants. This instruction reads as follows:

"The court instructs the jury that if you find and believe from the evidence in this case that immediately before the collision of the automobile in which James B. McCloskey was riding and the

timbers mentioned in evidence which were projecting from the rear of the truck mentioned in evidence that the said James B. McCloskey moved or swerved the steering wheel of the automobile in which he was riding, and interfered with the driving thereof, and that as a result of said movement and swerving, if any, of said automobile or interference with the driving, if any, by said James B. McCloskey, said automobile was caused to run into said timber, then your verdict must be for the defendants.''

It is claimed that this instruction is erroneous because it does not contain any provision "pertaining to the act of a person in an emergency in order to save the limb or life of a human being;'' that notwithstanding this error in the instruction "the jury, in its finding, has settled the question that James B. McCloskey did not grab the wheel or interfere in any wise with the driving of the automobile in which he was at the time and place riding.'' It may be that if the jury followed defendants' Instruction E it has determined this point, as plaintiff contends, but as defendants' Instruction E and plaintiff's Instruction 3 are in conflict, no one can tell which the jury followed and, as the jury may have followed plaintiff's Instruction 3 (it being erroneous) the judgment must be reversed and the cause remanded. [Crone v. United Rys. Co., 236 S. W. 654, 657.]

It is insisted that plaintiff was required to offer her Instruction 3 in view of the giving of defendants' Instruction E. However, plaintiff was not required to offer herein an instruction in an erroneous form by any conduct on defendants' part.

There are other points raised by defendants complaining of matters that will perhaps not arise at another trial and it is unnecessary for us to pass upon them. However, we might state in this connection that if plaintiff desires to submit her case upon common-law negligence it will be better for her to amend her petition as there is serious doubt in our minds as to whether or not any common-law negligence is now pleaded therein.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.