249 S.W.2d 417 (1952)
ROHDE
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 42866.
Supreme Court of Missouri, Division No. 1.
April 15, 1952.
Motion for Rehearing or to Transfer to Denied June 9, 1952.
Ernest L. Keathley, St. Louis, for appellant. Inman, Dyer, Gray & Dreher and C. O. Inman, St. Louis, of counsel.
Coburn, Storckman & Croft, Thomas L. Croft, Edward E. Murphy, Jr., St. Louis, for respondent.
Motion for Rehearing or to Transfer to Court En Banc Denied June 9, 1952.
COIL, Commissioner.
Appeal from a judgment entered on a defendant's verdict in plaintiff-appellant's suit for $25,000 damages for alleged injuries received while a passenger on defendant-respondent's motorbus.
Plaintiff contends that the court erred in giving instruction 6 at defendant's request.
It is undisputed that 39th Street is a north and south, and Shenandoah an east and west, street, each of which is estimated to be 40' or 50" wide; that there are "major street" stop signs at all four corners of the intersection of these streets.
Plaintiff testified that she boarded defendant's westbound Tower Grove bus at the northeast corner of 39th and Shenandoah in St. Louis. She paid her fare, turned and as she walked to the rear, the bus started. When she had reached a place about halfway back, the bus suddenly gave a terrific jolt, as a result of which she was thrown backward to the floor, striking her back and head thereon. She did not know *418 how far the bus had moved or its speed, or what caused the unusual movement.
Defendant's bus operator said that he stopped at the northeast corner, with the front end of the bus about 3' east of the east curb of 39th, where plaintiff and other passengers boarded. After plaintiff had started toward the rear and while the bus was stationary, he looked to the north and to the south on 39th. He could see at least a half block south but had no recollection of seeing any automobile approaching. When the bus had moved west about 6' and had reached a place about 3' west of the east curb line of 39th, he saw an automobile approaching from his left traveling northwardly on 39th. At that time, the front end of the automobile was 15' or 20' south of the south curb line of Shenandoah, was traveling 15 m. p. h., and gave the appearance of preparing to stop at the southeast corner. Just then, the driver of the automobile accelerated its speed, the bus operator applied his brakes and came to a stop 15' west of the east curb line of 39th. The automobile, continuing northwardly, swerved in front of the bus and continued on. The bus did not exceed a speed of 5 m. p. h. from the time it started until it stopped. Shenandoah is downgrade in the direction the bus was moving and the operator needed only to touch or fan his brakes to stop. He had applied little if any gas to start. He sounded no horn.
Four passengers testified for defendant. One said she saw an automobile pass within 6' of the front of the bus at a rate of speed of about 30 m. p. h.; that the bus had traveled about 10' at a maximum speed of 5 m. p. h. before it came to a stop about 3' west of the east curb line of 39th.
Another testified that she looked to the south just as the bus started and saw an automobile coming at "terrific speed"; that it was then almost at the intersection, or coming into the intersection, or near the intersection; that the brakes of the bus were applied and the bus stopped when its front end had reached the center of 39th Street.
One witness testified that he saw an automobile approaching from the south when the bus had "just started on its way," at which time the automobile was about 15' south of the south curb line of Shenandoah; that the automobile did not change its speed from the time he first saw it and proceeded northwardly at 25 to 30 m. p. h.; that the bus had traveled halfway across 39th Street when it came to a stop; that the automobile passed within 2' or 3' of the front of the bus.
The other witness said he saw an automobile approaching from the south when its fenders were about parallel with the major stop sign at the southeast corner of 39th and Shenandoah (there was no evidence as to where the stop sign was with reference to the south curb line of Shenandoah); that the automobile was traveling 25 or 30 m. p. h. and continued northwardly and passed within 2' to 5' of the front of the bus; that when the automobile started across Shenandoah, the bus was about 4' into 39th Street; that when he first saw the automobile, the bus either had just started to pull away or was stationary; that the automobile did not change its speed.
Plaintiff submitted her case by an instruction on the res ipsa loquitur theory.
Instruction 6 given for defendant was: "The Court instructs the jury that it was the duty of the defendant to exercise the highest degree of care for the safety of plaintiff and likewise to exercise the highest degree of care for the safety of the operator and any occupants of the automobile mentioned in the evidence.
"In this connection you are further instructed that if you find and believe from the evidence that at the time and place in question the automobile mentioned in the evidence was operated Northwardly on 39th Street and into the intersection of 39th Street and Shenandoah Avenue, at a rate of speed of from 15 to 30 miles per hour, if you so find, in violation of the boulevard stop sign for Northbound traffic at said intersection, if you so find, and at a time when the defendant's bus had already entered said intersection, if you so find, and if you further find that said automobile was driven in front of defendant's bus in close and dangerous proximity thereto, and that the operator of the bus *419 was confronted with an emergency as the result thereof, if you so find, and that the operator of the bus made an effort to avoid a collision with the automobile by bringing the bus to a stop, if you so find, and if you further find and believe from the evidence that the operator of the bus, under all the circumstances then and there existing, was exercising the highest degree of care in the operation thereof, if you so find, and that the defendant was not negligent as charged in other instructions submitted to you herein, if you so find, then plaintiff is not entitled to recover and your verdict should be for the defendant."
Important in determining the propriety of the quoted instruction is this: plaintiff pleaded and her proof supported (in that it did not exclude) general negligence of defendant in the control, maintenance, and operation of its bus. The case is therefore unlike and distinguishable from the recent en banc opinion in Lukitsch v. St. Louis Public Service Co., Mo.Sup., 246 S.W.2d 749, and the earlier case of Durmeier v. St. Louis County Bus Co., Mo.Sup., 203 S.W.2d 445, in both of which plaintiff's pleading or evidence or pleading and evidence excluded any inference of negligence other than in the operation of the bus; and further different from the Lukitsch case in that there, unlike here, the facts in the case excluded "any reasonable inference of negligence on the part of the bus operator in bringing about the emergency" hypothesized in the instruction there under consideration.
In the instant case, plaintiff pleaded general negligence of defendant "in the management, maintenance, operation and control of its said motorbus." Plaintiff's evidence as heretofore summarized showed only that she became a passenger and while walking to a seat was thrown to the floor by an unusual jolt of the bus.
Defendant's evidence (heretofore summarized) was such that from it a jury could reasonably find that defendant was negligent in failing to anticipate the emergency situation hypothesized in the instruction and thus could reasonably find that negligence of defendant brought about or contributed to bring about the emergency situation. This, for the reason that defendant adduced evidence from which the jury could reasonably find that before the bus moved from its stopped position at the place where plaintiff boarded it, defendant's operator knew or should have known that the automobile approaching from the south at 25 or 30 m. p. h. would not stop or had not stopped in compliance with the stop sign and would continue or was continuing at an unabated speed across the intersection, and could therefore reasonably find that the operator was negligent in moving the bus into the intersection. This is not to say that any such finding from defendant's evidence was compelled or that the jury could not reasonably find from all of defendant's evidence to the contrary. We simply make clear that the possible findings suggested are factually supported by portions of defendant's evidence.
Plaintiff's instruction 1 hypothesized a finding that plaintiff was a passenger on defendant's bus and that the bus suddenly and unusually violently jerked and lurched; that as a direct result thereof plaintiff was injured. It further told the jury that such facts were sufficient circumstantial evidence to warrant a finding that defendant was negligent and the jury could so find unless they found that the occurrence was not due to defendant's negligence; that if they found defendant was negligent and plaintiff's injuries were directly caused thereby, their verdict should be for plaintiff.
Defendant chose to invoke a principle of law known as the emergency doctrine by specifically hypothesizing a set of facts as a circumstance to be considered by the jury in determining whether a particular action of defendant constituted the exercise of the highest degree of care. That is to say, defendant chose to tell the jury in effect that if they found the facts hypothesized pertaining to an automobile running in front of the bus, and found that such constituted an emergency situation faced by defendant's operator, the jury should consider this circumstance or these circumstances in determining whether the *420 action of the operator in stopping the bus in the manner in which he stopped it, was the exercise of the highest degree of care in its operation. Whether defendant properly stated the principle which it chose to invoke depends upon whether the facts hypothesized were, if found to be true, legally sufficient to permit the jury to consider the emergency in determining whether defendant's operator exercised the highest degree of care.
The emergency doctrine is not a defense. A defendant is not exonerated because an emergency may have existed. The doctrine is simply a principle of law which means that the fact that action was taken in an emergency is a factor to be considered in determining the reasonableness of the particular action. An integral part of the doctrine, in the sense that it is prerequisite to its application, is that the emergency shall not have been caused or contributed to by the tortious conduct of the one asserting the emergency as a factor to be considered in determining the reasonable character of the action in question. The emergency doctrine has no application and may not be asserted if the emergency arises wholly or partially from the negligence of the one who seeks to invoke the doctrine. Rest.Torts, Vol. II, § 296, p. 796 and Mo.Ann., Supp. § 296, p. 107. In Teague v. Plaza Express Co., 354 Mo. 582, 591, 190 S.W.2d 254, 258[7], it was said: "The submission of the circumstance of sudden emergency as a factor in determining the reasonable character of a defendant's choice of action necessitates the hypothesizing of conduct of defendant prior to his coming into the position where the hypthesized emergency arose, in order that it may be found that the sudden emergency was not caused by his own tortious conduct." See also: McCloskey v. Renne, 225 Mo.App. 810, 817, 37 S.W.2d 950, 954[7-9]; Garvey v. Ladd, Mo.App., 266 S.W. 727, 731[5]; Burlingame v. Landis, 362 Mo. 523, 242 S.W.2d 578, 581[5, 6]; Lachman v. Pennsylvania Greyhound Lines, 4 Cir., 160 F.2d 496, 501[8-10, 11].
Instruction 6 does not hypothesize a situation under the facts of which the jury could properly consider the emergency with which the operator was faced in determining whether the operator exercised the highest degree of care under the circumstances. This is true because the jury could not consider the emergency situation in determining whether the stopping of the bus as it was stopped was the exercise of the highest degree of care in its operation, unless and until the jury had found that no negligence of the defendant brought about or contributed to bring about the emergency situation hypothesized in the instruction. Defendant, having voluntarily undertaken to specifically hypothesize a situation in which the jury could consider the emergency in determining the care of the operator in it, could not properly include in the instruction a hypothesis of only some of the facts essential to be found as prerequisite to the application of the emergency doctrine. Defendant undertook to affirmatively tell the jury what facts they needed to find in order to consider the emergency as a factor in determining the reasonableness of the act of its bus operator. It was incumbent upon defendant to include in its affirmative hypothesis all that was necessary to be found before the emergency could be considered.
Defendant omitted from its instruction the finding of an essential prerequisite to the application of emergency doctrine, viz., the hypothesis that no negligence of defendant caused or contributed to cause the emergency. Instruction 6, omitting as it does this essential requirement, nevertheless tells the jury that they may consider the emergency situation hypothesized in determining whether the bus operator exercised the highest degree of care. In this, the instruction is fatally defective.
True, instruction 6 does not, in so many words, state that the jury may consider the hypothesized emergency in determining whether the bus operator exercised the highest degree of care by bringing the bus to a stop in the manner in which he did, but such meaning is implicit in the language used. Indeed, if the language of the instruction does not so mean, then there is no *421 reason for having hypothesized an emergency situation; no other purpose than the one indicated could be served by the inclusion of the hypothesis.
We are of the opinion that the language, "and if you further find and believe from the evidence that the operator of the bus, under all the circumstances then and there existing, was exercising the highest degree of care in the operation thereof," refers and can refer only to the emergency situation just hypothesized as "the circumstances then and there existing." But even if, as defendant argues, this requirement of a finding of the highest degree of care in the operation of the bus may be said to relate to its operation prior to as well as at the time of the emergency hypothesized, nevertheless, the requirement is improperly limited to "operation" and excludes any reasonable inference of negligence in maintenance. Nix v. St. Louis Public Service Company, Mo.App., 228 S.W.2d 369, 371-374; Jones v. Terminal R. R. Ass'n of St. Louis, Mo.Sup., 242 S.W.2d 473, 478[11-13].
Defendant says, however, that it could properly require the jury to find that its operator was not negligent both before and after the emergency arose, or, defendant says, "In the alternative, the defendant could ask the jury to find that its operator was not negligent in the acts he took after the emergency arose, and that there was no other negligence prior to the emergency on the part of defendant."
We agree that in a res ipsa case it is not necessary that the instruction specifically negative all conceivable negligence of defendant prior to the emergency; that freedom from any negligence in bringing about the emergency may be hypothesized generally. But whatever language may be used, general or specific, it must reasonably mean that the jury may not consider the emergency unless they find defendant free of any negligence in creating it.
Defendant earnestly contends that the phrase of the instruction requiring a finding "that the defendant was not negligent as charged in other instructions submitted to you herein" effectively required the jury to find, before applying the principle of the emergency doctrine, that defendant's negligence did not cause or contribute to cause the emergency. We cannot agree. This, for the reason that, as heretofore noted, the jury has been specifically instructed in effect that they could consider the emergency situation in determining whether defendant exercised the highest degree of care after it arose without any inclusion in the hypothesis of the essential element of freedom from negligence in creating the emergency without which the emergency doctrine has no application. Having chosen to direct the jury's attention to a specific set of facts, defendant may not eliminate one essential fact and then attempt to supply it by a "catch-all" phrase. This, at best, confuses and misleads.
Defendant could have relied solely upon instruction 8 (burden of proof) wherein the jury was instructed, "and if you do find and believe from all the evidence in the case that the defendant was not negligent, then your verdict should be in favor of the defendant." But if the purpose of the phrase of instruction 6 "that the defendant was not negligent as charged in other instructions submitted to you herein" was intended to be tantamount to the requirement quoted from instruction 8, then no possible purpose, other than to confuse a jury, could be served by hypothesizing the emergency situation in the forepart of instruction 6. In other words, if it be contended that any error contained in instruction 6 is immaterial because a finding in the conjunctive of no negligence is required by the last clause which in any event would relieve defendant of liability, then the hypothesis of the emergency situation has no place in the instruction. Its inclusion under such circumstances could amount to nothing other than a singling out and giving undue prominence to defendant's evidence, not in explanation of any principle relied upon, but simply as something put in an instruction which would serve no purpose other than to confuse the jury.
In our opinion, the language of instruction 6, "that the defendant was not negligent as charged in other instructions submitted *422 to you herein', is at best misleading and confusing in a res ipsa case wherein no specific negligence has been charged, Harke v. Haase, 335 Mo. 1104, 1109[2], 75 S.W.2d 1001, 1003[4, 6], and is not tantamount to a finding that defendant is guilty of no negligence under all the evidence in the case. But more important here, the jury could not know from the language used that they were to consider the emergency situation in determining the reasonableness of the bus operator's action only if they also found that the operator's negligence did not bring about the very emergency hypothesized.
This is not to hold or indicate that we mean that defendant in a res ipsa case may not generally negative its unspecified negligence. Durmeier v. St. Louis County Bus Co., supra, 203 S.W.2d 449[5]. Nor do we mean that any particular words must be used to accomplish the inclusion of the essential element (here omitted) prerequisite to the invocation of the emergency doctrine. But we do hold in this case that this essential finding prerequisite to the application of the emergency doctrine is not supplied by the requirement that the jury find "that the defendant was not negligent as charged in other instructions submitted to you herein."
If defendant's instruction were not defective as herein noted, plaintiff's further contention that it singles out and unduly emphasizes testimony supporting defendant's theory would be without merit. Borgstede v. Waldbauer, 337 Mo. 1205, 1216, 88 S.W.2d 373, 378.
Our view that instruction 6 is erroneous makes it unnecessary to consider the other assignment of error pertaining to an alleged oral instruction.
For error in giving instruction 6, the judgment is reversed and the cause remanded.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.